The BOARD OF REGENTS OF the UNIVERSITY OF OKLAHOMA, Appellant,

v.

Richard D. BAKER; Sarah R. Crim; Marilyn H. Brown; D. B. Ruckington; Robert A. Ford; Homer A. Brown; Marvin W. Baker, Jr.; Harry Clark; Philip J. Nolan; Matthew E. Kraynak; Gene Levy; William N. Huff; Victoria Leigh (Poole); William Horosz; Ed F. Crim, Jr.; Dragan Milivojevic; Morris Kagan; Bruce Granger; Betty L. Atinson; Robert M. St. John; Darrel G. Harden; Sybrand Broersma; Richard D. Fowler; John W. Renner; Glenn R. Snider; Lauren Wispe; William Carmack; Junetta Davis; R. E. Hilbert; Erich H. Eichholz; Gary T. Thompson; Joan E. Rapf; Billie D. Holcomb; and Mack R. Palmer, Appellees.

No. 56116.

Supreme Court of Oklahoma.

Dec. 22, 1981.

Stanley Ward, Kurt F. Ockershauser, Susan Gail Seamans, Norman, for appellant.

Rebecca J. Patten, Draper, Deatherage & Patten, Norman, for appellees.

Daniel D. Draper, Jr., Speaker of the Oklahoma House of Representatives, Marvin B. York, President pro-tempore of the Oklahoma Senate, Oklahoma City, amicus curiae.

The Board of Regents for the Oklahoma Agricultural and Mechanical Colleges by Charles E. Drake and Kenneth L. Davidson, Stillwater, amicus curiae.

IRWIN, Chief Justice:

In 1979 the Oklahoma Legislature approved Senate Joint Resolution No. 9 (SJR9) which directed all state agencies, including the Board of Regents (Board) of the University of Oklahoma, to increase the salary of all employees by six percent for fiscal year 1979–80.[1] Appellees are employed by the State of Oklahoma as faculty members of the University but Board did not grant them the six percent salary increase. Appellees commenced mandamus proceedings to compel Board to pay them the salary increase as prescribed by SJR9.

Board defended the action on the grounds that the Oklahoma Legislature has no legal authority to determine pay increases for

---

1. Okl.Sess.Laws 1979, 918. Section 1A of SJR9 provides:

Effective July 1, 1979, or the first day of the pay period in which July 1, 1979, is included, all full-time officers and employees of the state shall be awarded a pay increase in conformity with the schedule in Section 13 of this resolution. This plan is designed to give each officer and employee an approximate six percent (6%) increase, except that Fifty Dollars ($50.00) per month shall be the minimum increase and One Hundred Twenty-five Dollars ($125.00) per month shall be the maximum increase to be awarded.

such employees because it constitutes an impermissible interference with the constitutional authority vested in the Board by Oklahoma Constitution, Article XIII, § 8 and as applied to the University of Oklahoma, SJR9 is unconstitutional.

Article XIII, § 8, Okl.Const. provides:

"The government of the University of Oklahoma shall be vested in the Board of Regents * * * to be appointed by the Governor by and with the consent of the Senate * * *"

The district court determined that Board does have exclusive authority to determine faculty salaries, but further found that since SJR9 "is directed toward the single purpose to fight the war on inflation," an important and "compelling" matter of "statewide concern," legislative pre-emption of Board authority was justified. The writ of mandamus was granted and Board appealed.

The district court's conclusion that SJR9 was directed toward a single purpose cannot be sustained. The focus in this case at trial and before this court has been upon the minimum salary increase provision of SJR9. Appellees claim only two legislative purposes underlie this mandate: to provide sufficient salaries to state employees to attract and keep qualified personnel, and to insure that all state employees, including university and college employees, receive adequate compensation. The issue in this case is, therefore, a narrow one: Does Article XIII, § 8, vest exclusive authority in Board to determine faculty salary increases?

Board argues that the authority to set faculty salaries is inherent in the power to govern the University, and that this constitutionally delegated power cannot be exercised by both it and the Legislature. Appellees contend that the minimum salary increase provision is a reasonable, non-discriminatory provision which neither concerns matters essential to the University's academic mission nor imposes any of the evils against which Article XIII, § 8, is directed.[2]

■ While the law-making power of the Legislature is supreme within its proper sphere, that power may be restricted and limited by constitutional provisions. *State ex rel. Grand Jury of McCurtain County v. Pate*, Okl., 572 P.2d 226 (1977). Limitations on legislative authority may be implied as well as expressed in the Constitution. *Grim v. Cordell*, 197 Okl. 144, 169 P.2d 567 (1946). Every positive delegation of power by the Constitution to one officer or department of government implies a negation of its exercise by any other officer or department. *Trapp v. Cook Const. Co.*, 24 Okl. 850, 105 P. 667 (1909).[3]

---

2. Appellees also contend that "the university is free to pursue any course of action as long as it does not violate any law enacted by the legislature." This contention is based on our statement in *Rheam v. Board of Regents*, 161 Okl. 268, 18 P.2d 535 (1933), that

The board of regents have the implied power to do everything necessary and convenient, *where it is not prohibited, either express or implied, by law*, to accomplish the objects for which the institution was founded. (emphasis added)

It is enough to note in disposing of this contention that *Rheam* was decided prior to the adoption of Article XIII, § 8, and that although the statement was repeated in *Pyeatte v. Board of Regents of the University of Oklahoma*, 102 F.Supp. 407 (W.D.Okl.1952), cert. den. 342 U.S. 936, 72 S.Ct. 567, 96 L.Ed. 696 (1952), subsequent to adoption of the amendment, the question of whether Article XIII, § 8, limited the Legislature's otherwise plenary control over university affairs was not at issue in either case.

3. Article V, § 36, of the Oklahoma Constitution provides:

The authority of the Legislature shall extend to all rightful subjects of legislation, and any specific grant of authority in this Constitution, upon any subject whatsoever, shall not work a restriction, limitation or exclusion of such authority upon the same or any other subject or subjects whatsoever.

This section was incorporated in the constitution to preclude the idea of the exclusion of power by implication. *Anderson v. Ritterbusch*, 22 Okl. 761, 98 P. 1002 (1909). The implied limitations with which Article V, § 36, is concerned are those which might otherwise arise from grants of power to the Legislature, not those arising from grants of power to other constitutional entities.

The government of the University of Oklahoma is vested in the Board of Regents by Article XIII, § 8, of the Oklahoma Constitution. Prior to the addition of this provision to the Constitution in 1944, the authority of Board was purely statutory. We have no doubt that in elevating the status of Board from a statutory to a constitutional entity the people intended to limit legislative control over University affairs.

Oklahoma is one of only a few states in which the legal status of public universities is constitutional rather than statutory.[4] Among these jurisdictions, constitutional provisions relating to the power of university officials differ substantially, and we have found none identical to our own. However, in construing these varied provisions some courts have reached certain common conclusions which we find persuasive.

Article X, Section 9(2)(a) of the Montana Constitution (1972) provides:

> The government and control of the Montana university system is vested in a board of regents of higher education which shall have full power, responsibility, and authority to supervise, coordinate, manage and control the Montana university system * * *.

In *Board of Regents of Higher Education v. Judge*, 543 P.2d 1323 (Mont.1975), the Supreme Court of Montana found that while "the principle of regent independence was definitely intended by the drafters of the 1972 Montana Constitution . . . legislative control of higher education through the appropriation process remains." The court determined that those provisions of the Montana Constitution which preserved this legislative control also justified the use of line item appropriations in its exercise, except "when the authority of the Regents to supervise, coordinate, manage and control the university system is infringed by legislative control over expenditures." The court defined its task in resolving disputes involving the distinction between these constitutional powers as one of harmonizing in a practical manner legislative and Regent authority after scrutinizing each condition placed upon appropriations to higher education in order to determine whether the condition, in light of its impact on the management and control exercised by the Regents, is in effect a direction of academic policy or administration by the legislature.

Among the conditions examined by the court in *Judge* was one limiting salary increases for presidents of units of the university system and for the commissioner of higher education to five percent above that received during a specified period. The court found that "[S]uch a limitation on significant expenditures indicates a complete disregard for the Regents' constitutional power."

Inherent in the constitutional provision granting the Regents their power is the realization that the Board of Regents is the competent body for determining priorities in higher education. An important priority is the hiring and keeping of competent personnel. The limitation set forth in Section 12(6), H.B. 271, specifically denies the Regents the power to function effectively by setting its own personnel policies and determining its own priorities. The condition is, therefore, unconstitutional.

The appellees attempt to distinguish *Judge* from the instant case on the basis that the differences between legislative mandates for minimum and maximum raises are significant in the following respects: Legislatively determined ceilings on pay increases may actually set final salary amounts and may be used to "punish" a university or its employees, whereas mandated minimum increases leave Regents free to set a higher final salary and are wholly beneficial. The decision in *Judge*, however, did not turn on legislative motivation nor the amount of discretion retained

---

4. See L. Glenny & T. Dalglish, Public Universities, State Agencies, And The Law (1973), cited in Horowitz, The Autonomy of the University of California Under the State Constitution, 25 U.C.L.A.L.Rev. 23, at 24, fn. 1 (1977). These states include California, Colorado, Georgia, Idaho, Michigan, Minnesota, Montana, and Nebraska.

by the Regents in setting a "final" salary amount. The court in *Judge*, while recognizing a broad legislative appropriation power, found unconstitutional a provision limiting salary increases for a few university personnel because it denied the Regents its constitutionally vested "power to function effectively by setting its own personnel policies and determining its own priorities."

Article VII, section 10 of the Nebraska Constitution (1875) provides in part:

> The general government of the University of Nebraska shall, under the direction of the Legislature, be vested in * * * the Board of Regents * * * who shall be elected * * * Their duties and powers shall be prescribed by law; * * *.

Although the above provision might appear to place far greater control of university affairs in legislative hands than does the express language of Article XIII, § 8, Okla.Const., the Supreme Court of Nebraska, in *Board of Regents of Univ. of Neb. v. Exon*, 199 Neb. 146, 256 N.W.2d 330 (1977), stated:

> We think it is clear that the purpose of the constitutional provision was to remove the University from the plenary control of the Legislature and establish the Board of Regents as an independent body charged with the power and responsibility to manage and operate the University as free from political influence and control as possible.
>
> \* \* \* \* \* \*
>
> We believe the finding by the trial court that the Legislature may fix and determine the manner in which raises are to be given to employees of the Board of Regents was erroneous. The determination of salary schedules and the compensation to be paid to the employees of the Board of Regents is an integral part of the general government of the University.

In *San Francisco Labor Council v. Regents, Etc.*, 26 Cal.3d 785, 163 Cal.Rptr. 460, 608 P.2d 277 (1980), the Supreme Court of California held that a statute requiring the Regents of the University of California to fix minimum salary rates for certain employees at or above the prevailing wage rates in various localities violated the constitutional provision establishing the independence of the University. Article IX, sec. 9, Calif.Const., provides in part:

> (a) The University of California shall constitute a public trust, to be administered by the existing corporation known as 'The Regents of the University of California', with full powers of organization and government, subject only to such legislative control as may be necessary to insure the security of its funds and compliance with the terms of the endowments of the university and such competitive bidding procedures as may be made applicable to the University by statute for the letting of construction contracts, sales of real property, and purchasing of materials, goods, and services . . .

The court in *San Francisco Labor Council* noted that while "the University is intended to operate as independently of the state as possible . . . the University is not completely free from legislative regulation." In addition to the specific provisions in Article IX, sec. 9, Calif.Const., California courts have recognized three areas of permissible legislative regulation. First, the Legislature's power of appropriation prevents the Regents from compelling appropriations for salaries. Second, general police power regulations governing private persons and corporations may be applied to the University. Third, legislation regulating public agency activity not generally applicable to the public may be made applicable to the university when the legislation regulates matters of statewide concern not involving internal university affairs. The court found that the prevailing wage requirement could not be brought within any of these categories.

In concluding that a prevailing wage requirement is not a matter of statewide concern, the California Supreme Court found the issue as it relates to the Regents analogous to similar issues in municipal law. The court recognized that it had long held that "the salaries of local employees of a charter city constitute municipal affairs and are not subject to general laws," and found

that holding based "on constitutional power in local authority, to the exclusion of legislative interference." Likewise, the constitution establishes the independence of the University and curtails legislative power over University affairs. The court then found that "[S]alary determination is as important to the autonomy of the university as it is to the independence of chartered cities and counties."

 We find that Article XIII, § 8, of the Oklahoma Constitution establishes the Board of Regents of the University of Oklahoma as an independent body charged with the power to govern the University. While constitutionally assured independence cannot be equated with complete immunity for legislative regulation, it is unnecessary for us to fully examine here the nature and extent of legislative regulation applicable to Board. The determination of faculty salaries is clearly an integral part of the power to govern the University and a function essential in preserving the independence of the Board. Having reached this conclusion, it is unnecessary to consider the effect of Article XIII–A, Oklahoma Constitution, which relates to the Oklahoma State System of Higher Education. Section 3 of said Article provides that the appropriation made by the Legislature for all such institutions shall be made in consolidated form without reference to any particular institution and the Oklahoma State Regents for Higher Education shall allocate to each institution according to its needs and functions.

The salary provisions contained in SJR9 are not unreasonable, nor do we see in them an attempt to suppress academic freedom. The question, however, is not whether the Legislature acted reasonably, but whether Article XIII, § 8, permits this legislative action at all. Decisions about the level and manner of distributing salary increases directly relate to and affect judgments on individual needs and performance as well as institutional needs and resources. The increase in salary provisions in SJR9 substantially interferes with Board's authority to make those judgments, and are, therefore, in conflict with Article XIII, § 8.

REVERSED.

BARNES, V. C. J., and LAVENDER, SIMMS, DOOLIN, and HARGRAVE, JJ., concur.

HODGES, J., dissents.

OPALA, J., disqualified.