Dear Representative Widener:
 Attorney General Loving has received your letter requesting an official Attorney General Opinion addressing, in effect, the following question:
 May the University of Oklahoma legally pay Dr. Richard Van Horn, President, $100,000.00 at the expiration of his term?
Because your question requires a consideration of specific facts and may be answered by reference to controlling constitutional and case law, the issuance of a formal opinion of the Attorney General is not necessary. The discussion which follows is, therefore, not an official opinion of the Attorney General; it represents, rather, the analysis and conclusions of the undersigned Assistant Attorney General.
In the circumstance about which you inquire, President Van Horn and the University of Oklahoma entered into an employment contract on May 2, 1989. In addition to the base salary of President Van Horn, the contract contained an incentive clause which permitted him to accrue the amount of $20,000.00 per year for the first five (5) years of his tenure as an incentive for his continued employment with the University. Pursuant to the contract, President Van Horn was to receive the total of this deferred incentive compensation ($100,000.00) at the conclusion of his fifth year of employment. The contract was subsequently approved by the University of Oklahoma Board of Regents. The Board of Regents reserved the right to terminate the contract at the end of any fiscal year and University funds beyond any fiscal year were not encumbered. President Van Horn announced that he will-resign as President of the University of Oklahoma effective July, 1994. Before the date that said resignation becomes effective, President Van Horn will have completed his fifth year in office.
Your inquiry specifically references the powers of the Board of Regents of the University of Oklahoma pursuant to ArticleXIIi, section 8 of the Oklahoma Constitution. That section, in pertinent part provides:
 "The government of the University of Oklahoma shall be vested in the Board of Regents . . . to be appointed by the Governor by and with the advice and consent of the Senate(.)"
The Supreme Court of Oklahoma has previously interpreted Article XIII, section 8 of the Oklahoma Constitution and addressed the powers of the Board of Regents in Board of Regents of the University of Oklahoma v. Baker, 638 P.2d 464
(Okla. 1981). In that case, faculty members of the University of Oklahoma brought a mandamus action to compel the Board of Regents to pay them the salary increase prescribed by the Legislature which directed all state agencies, including the Board of Regents, to increase the salary of all state employees, including university faculty members. The district court granted mandamus and the Board of Regents appealed to the Supreme Court, arguing that the authority to set faculty salaries is inherent in the power to govern the University and that this constitutional power cannot be exercised by both the Board and the Legislature. Baker, at 466. The Supreme Court reversed the decision of the district court and held that the Legislature was restricted from limiting the governing powers granted by the Oklahoma Constitution to the Board.
In its discussion of Baker, the Supreme Court recognized that Article XIII, 8 of the Oklahoma Constitution vested the government of the University of Oklahoma in the Board of Regents. Baker, at 467. The Court also recognized the fact that prior to the addition of this provision to the Constitution in 1944, the authority of the Board was purely statutory. Baker, at 467. The Court next stated:
 "We have no doubt that in elevating the status of Board from a statutory to constitutional entity the people intended to limit legislative control over University affairs."
Baker, at 467.
As this office has previously stated, Baker establishes the broad authority of the constitutionally created boards of regents to independently govern the institutions and employees under their control. See, A.G. Opin. No. 92-010; see also, A.G. Opin. No. 91-006. The Baker court found that this power of governing included the determination of salary amounts. Specifically the Supreme Court stated that:
 "We find that Article XIII, section 8, of the Oklahoma Constitution establishes the Board of Regents of the University of Oklahoma as an independent body charged with the power to govern the University. . . . The determination of faculty salaries is clearly an integral part of the power to govern the University and a function essential in preserving the independence of the Board."
Baker, at 469.
The Oklahoma Supreme Court in Baker further provided that it is within the Board of Regents' authority to make those judgments on individual needs and performances as well as institutional needs and resources. Baker, at 469. The Court stated that "decisions about the level and manner of distributing salary increases directly relate to and affect" those judgments. Baker, at 469. The Oklahoma Supreme Court was persuaded by the decision in the Montana case of Board of Regents of Higher Education v. Judge, 543 P.2d 1323
(Mont. 1975), in which the Montana Supreme Court stated:
 "Inherent in the constitutional provision granting the Regents their power is the realization that the Board of Regents is the competent body for determining priorities in higher education. An important priority is the hiring and keeping of competent personnel(.)"
Baker, citing Judae at 467.
The Baker court was also influenced by the Nebraska case of Board of Regents of University of Nebraska v. Exxon,256 N.W.2d 330 (Neb. 1977), in which the Nebraska Supreme Court stated:
 "We think it is clear that the purpose of the constitutional provision was to remove the University from the plenary control of the Legislature and establish the Board of Regents as an independent body charged with the power and responsibility to manage and operate the University as free from political influence and control as possible."
Baker, citing Exon at 468.
As in Baker, the decision of the Board of Regents in this matter concerning the deferred incentive compensation of President Van Horn was a decision which related to and affected the Board of Regents' judgment on individual needs and performances, as well as the University of Oklahoma's institutional needs and resources. Further, as discussed herein, the determination of salary is an integral part of the power given to the Board of Regents to govern the University and a function essential in preserving the independence of the Board. It appears that in this matter the Board of Regents lawfully weighed the University of Oklahoma's need for President Van Horn's long-term service to the University against the associated costs to encourage such long-term performance, in its decision to provide such a salary incentive to President Van Horn.
Therefore, for the above-cited reasons, it is the opinion of the undersigned counsel that the deferred incentive payment of $100,000.00 to University of Oklahoma President Richard Van Horn falls within the constitutional powers of the Board of Regents to govern the University pursuant to Article XIII, section 8 of the Oklahoma Constitution. The fact that the payment will coincide with the approximate date of President Van Horn's resignation does not affect the legality or validity of his contractual arrangement with the University.
respectfully submitted,
(Barry K. Koonce)