Dear Director Duffy,
¶ 0 This office has received your letter requesting an official Opinion asking, in effect, the following questions:
1. Does the Oklahoma Department of Wildlife have the legalauthority to enter into an agreement with a bank to offer acredit card bearing the Department's logo?
 2. Is the release of license holders' information to a bankfor the purpose of generating revenue for the Department a"Department purpose" within the meaning of 51 O.S. 24A.23(1999)?
 3. May the Department prohibit the use of its logo by aprivate enterprise?
 I. AGREEMENT BETWEEN THE DEPARTMENT OF WILDLIFE AND A BANK FOR A CREDIT CARD BEARING THE DEPARTMENT'S LOGO.
¶ 1 Your first question asks if the Department of Wildlife Conservation has the authority to enter into an agreement with a bank to offer a credit card bearing the Department's logo. The Oklahoma Supreme Court has held that state agencies possess, in addition to the powers expressly granted them by statute, implied powers as well:
 In addition to the powers expressly given by statute to an officer or board of officers, he or it has, by implication, such additional powers as are necessary for the due and efficient exercise of the powers expressly granted, or as may be fairly implied from the statute granting the express powers.
Oklahoma Tax Comm. v. Fortinberry Co., 207 P.2d 301, 304 (Okla. 1949) (citation omitted).
¶ 2 In addition, the Department of Wildlife Conservation, as a constitutional entity, has powers that are not enjoyed by all state agencies. Both the Department of Wildlife Conservation and the Oklahoma Wildlife Conservation Commission were created by Article 26 of the Oklahoma Constitution, which was adopted by the citizens of the State of Oklahoma in 1956. Article XXVI, Section 1 vests the Director of the Wildlife Department with the authority to govern that agency, subject to rules and regulations approved by the Commission:
 There is hereby created a Department of Wildlife Conservation of the State of Oklahoma and an Oklahoma Wildlife Conservation Commission. The Department . . . shall be governed by the Wildlife Conservation Director, hereinafter created, under such rules, regulations and policies as may be prescribed from time to time by the Oklahoma Wildlife Conservation Commission. . . .
OKLA. CONST. Article XXVI, Section 1 (emphasis added).
¶ 3 In Board of Regents of the Univ. of Oklahoma v. Baker,638 P.2d 464 (Okla. 1981), the Oklahoma Supreme Court interpreted Article XIII, Section 8 of the Constitution which endows the Board of Regents for the University of Oklahoma with the authority to govern the University:
 The government of the University of Oklahoma shall be vested in a Board of Regents consisting of seven members to be appointed by the Governor by and with the advice and consent of the Senate. . . .
OKLA. CONST. Article XIII, Section 8 (emphasis added).
¶ 4 The Baker Court found that in elevating the Board of Regents "from a statutory to a constitutional entity the people intended to limit legislative control over University affairs."Baker, 638 P.2d at 467.
¶ 5 In Baker, the Board of Regents challenged a joint resolution of the Legislature that mandated that all state agencies, including the Board of Regents, increase the salaries of all employees by six percent in the coming fiscal year. The Court held that the Legislature's enactment constituted impermissible interference with the Board of Regents' constitutional authority to govern the University:
 The determination of salary schedules and the compensation to be paid to the employees of the Board of Regents is an integral part of the general government of the University.
Baker, 638 P.2d at 468 (emphasis added).
¶ 6 In reaching this conclusion, the Court quoted with approval a decision of the California Supreme Court, San Francisco LaborCouncil v. Regents, 608 P.2d 277 (Cal. 1980). At issue in that case was a California statute that required the regents of the University of California to maintain minimum salary rates for certain employees at or above the prevailing wage rate in certain localities. The Regents court found the statute to be an unlawful encroachment on the Regents' constitutional authority, and further found that they were only subject to such legislative control as was necessary to insure the security of its funds and compliance with the terms of the endowment of the University, and that "the University is intended to operate as free of the state as possible." Regents, 608 P.2d at 282.
¶ 7 As noted in Attorney General Opinion 96-071, the Baker
rationale is equally applicable to the provisions of Article XVI, Section 1. The Director of the Department of Wildlife Conservation is to govern the Department. By fair implication, this authority would include the ability to enter into an agreement with a bank to offer a credit card bearing the Department's logo.
¶ 8 The Baker Court also found that while the Oklahoma Constitution has granted to constitutional agencies broad powers, they are still subject to legislative regulation: "constitutionally assured independence cannot be equated with complete immunity for legislative regulation. . . ." Baker,638 P.2d at 469.
¶ 9 The Court noted with approval that California courts:
 [H]ave recognized three areas of permissible legislative regulation. First, the Legislature's power of appropriation prevents the Regents from compelling appropriations for salaries. Second, general police power regulations governing private persons and corporations may be applied to the University. Third, legislation regulating public agency activity not generally applicable to the public may be made applicable to the university when the legislation regulates matters of statewide concern not involving internal university affairs.
Baker, 638 P.2d at 468.
¶ 10 In addition, the Oklahoma Supreme Court has held that the Wildlife Conservation Director's authority to govern the Department "does not preclude legislation which would affect private rights or concern procedures available to the public."Ray v. Thompson, 458 P.2d 300, 303 (Okla. 1969).
¶ 11 The statute that is the subject of your second question exemplifies the Legislature's ability to regulate constitutional agencies in areas that do not concern their internal governance.
 II. RELEASE OF INFORMATION REGARDING LICENSE HOLDERS TO A BANK.
¶ 12 Your second question asks if the release of license holders' information to a bank for the purpose of generating revenue for the Wildlife Department is a department purpose within the meaning of Title 51 O.S. 24A.23. That statute requires that such information be kept confidential, subject to an exception for use for a "Department purpose."
 A. The Department of Wildlife Conservation shall keep confidential the information provided by persons, including the name and address of the person, applying for or holding any permit or license issued by the Department, to the extent the information individually identifies the person. The Department may use the information for Department purposes or allow the United States Fish and Wildlife Service to use the information for survey purposes only. The Department shall allow any public body to have access to the information for purposes specifically related to the public [body's] function (emphasis added).
¶ 13 While the phrase "Department purposes" is not defined in this section, Article XXVI, Section 4 of the Oklahoma Constitution mandates that all monies that accrue to the Commission be used for the purpose of wildlife preservation and conservation:
 "The fees, monies, or funds arising from the operation and transactions of said Commission and from the application and the administration of the laws and regulations pertaining to the bird, fish, game and wildlife resources of the State and from the sale of property used for said purposes shall be expended and used by said Commission for the control, management, restoration, conservation and regulation of the bird, fish, game and wildlife resources of the State, including the purchase or other acquisition of property for said purposes, and for the administration of the laws pertaining thereto and for no other purpose."
OKLA. CONST. Article XXVI, Section 4
¶ 14 Further, the Legislature has defined the purpose of the Wildlife Commission as follows:
 "The . . . Commission shall constitute an advisory, administrative and policymaking board for the protection, restoration, perpetuation, conservation, supervision, maintenance, enhancement, and management of wildlife in this state. . . ."
29 O.S. 3-103(A) (1998) (emphasis added).
¶ 15 We thus conclude that a "Department purpose" would be one that furthers wildlife preservation and protection.
¶ 16 Your question asks about the "release" of information regarding license holders. The statute authorizes its "use" for a department purpose, and we must interpret that word in its ordinary sense, since there is no contrary intent evident in the statute. See 25 O.S. 1 (1991); In re Certification of StateLaw, 560 P.2d 195, 197 (Okla. 1997). WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY at 1279 (3d ed. 1993), defines "use" as "to put into action or service," a definition which is more indicative of some internal purpose than it is of commercial sale. In addition, it is necessary to consider the language of the statute as a whole when seeking to determine the intent of the Legislature. Oklahoma Journal Publ'g Co. v. City of OklahomaCity, 620 P.2d 452, 454 (Okla.Ct.App. 1979). The statute imposes a confidentiality requirement regarding the information that only authorizes its release to other public bodies "for purposes specifically related to the public [body's] function," and permits the United States Fish and Wildlife Service only to have access to it "for survey purposes only." We conclude that the Legislature did not intend for information regarding license holders to be used in the manner described in your second question, and that the Department can only utilize it for some purpose relating to wildlife preservation and protection.
 III. DEPARTMENT'S ABILITY TO PROHIBIT UNAUTHORIZED USE OF ITS LOGO.
¶ 17 Your third question asks if the Department can prohibit the use of its logo by a private enterprise. If the logo is properly registered with the Register of Copyrights in accordance with 17 U.S.C.A. 410, the Department could seek an injunction in the United States District Court to prohibit its unauthorized use. If a party were to use the logo without the permission of the Wildlife Department, that party could be committing consumer fraud. If the logo is not protected by copyright or trademark, it is in the public domain and can be used by anyone. See CompcoCorp. v. Day-Brite Lighting, Inc., 376 U.S. 234, 237 (1964).
¶ 18 It is, therefore, the official Opinion of the AttorneyGeneral that:
 1. The Director of the Oklahoma Department of WildlifeConservation, by virtue of Article XXVI, Section 1 of theOklahoma Constitution, is vested with the power to govern theOklahoma Department of Wildlife Conservation. Thisconstitutionally vested power includes the ability to enter intoan agreement with a bank to offer a credit card bearing theDepartment's logo.
 2. Pursuant to 51 O.S. 24A.23(A) (1999), providinginformation regarding license holders to a bank for the purposeof generating revenue does not constitute a "Department purpose"and the Department cannot release the information in thatmanner.
 3. The Department may prohibit the use of its logo by aprivate enterprise if the logo is properly registered with theRegister of Copyrights in accordance with 17 U.S.C.A. 410.
W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
WILLIAM F. O'BRIEN ASSISTANT ATTORNEY GENERAL