[S.F. No. 23988. Apr. 10, 1980.]

SAN FRANCISCO LABOR COUNCIL et al.,
Plaintiffs and Appellants, v.
THE REGENTS OF THE UNIVERSITY OF CALIFORNIA et al.,
Defendants and Respondents.

COUNSEL

William A. Sokol, Victor Van Bourg and Van Bourg, Allen, Weinberg & Roger for Plaintiffs and Appellants.

Andrew Thomas Sinclair as Amicus Curiae on behalf of Plaintiffs and Appellants.

Donald L. Reidhaar, Milton H. Gordon, Glenn R. Woods, Gary Morrison and Patrick K. Moore for Defendants and Respondents.

OPINION

CLARK, J.—Plaintiffs petitioned the superior court for writ of mandate to compel the Regents of the University of California to fix minimum salary rates for certain employees at or above the prevailing wage rates in various localities in accordance with Education Code section 92611. The trial court sustained defendants' demurrer without leave to amend on ground the statute conflicts with article IX, section 9 of the California Constitution. Plaintiffs appeal from judgment of dismissal. The judgment must be affirmed.

Education Code section 92611 provides: "The minimum and maximum salary limits for laborers, workmen, and mechanics employed on an hourly or per diem basis need not be uniform throughout the state, but the regents shall ascertain, as to each such position, the general prevailing rate of such wages in the various localities of the state.

"In fixing such minimum and maximum salary limits within the various localities of the state, the regents shall take into account the prevailing rates of wages in the localities in which the employee is to work and other relevant factors, and shall not fix the minimum salary limits below the general prevailing rate so ascertained for the various localities." (Stats. 1976, ch. 1010, § 2, operative 30 Apr. 1977.)

Article IX, section 9 provides: "(a) The University of California shall constitute a public trust, to be administered by the existing corporation known as 'The Regents of the University of California,' *with full powers of organization and government, subject only to such legislative control* as may be necessary to insure the security of its funds and compliance with the terms of the endowments of the university and such competitive bidding procedures as may be made applicable to the university by statute for the letting of construction contracts, sales of real property, and purchasing of materials, goods, and services...."[1] (Italics added.)

■ Article IX, section 9, grants the regents broad powers to organize and govern the university and limits the Legislature's power to regulate either the university or the regents. This contrasts with the comprehensive power of regulation the Legislature possesses over other state agencies.

The courts have also recognized the broad powers conferred upon the regents as well as the university's general immunity from legislative regulation. "'The Regents have the general rule-making power in regard to the University...and are...fully empowered with respect to the organization and government of the University....' [Citations.] '[T]he power of the Regents to operate, control, and administer the University is virtually exclusive. [Citations.]'" (*Regents of University of California v. Superior Court* (1970) 3 Cal.3d 529, 540 [91 Cal.Rptr. 57, 476 P.2d 457]; *California State Employees' Assn. v. Flournoy* (1973) 32 Cal. App.3d 219, 233 [108 Cal.Rptr. 251]; *California State Employees' Assn. v. State of California* (1973) 32 Cal.App.3d 103, 109 [108

---

[1]Article IX, section 9, subdivision (f), further provides: "The Regents of the University of California shall be vested with the legal title and the management and disposition of the property of the university and of property held for its benefit and shall have the power to take and hold, either by purchase or by donation, or gift, testamentary or otherwise, or in any other manner, without restriction, all real and personal property for the benefit of the university or incidentally to its conduct; provided, however, that sales of university real property shall be subject to such competitive bidding procedures as may be provided by statute. Said corporation shall also have all the powers necessary or convenient for the effective administration of its trust, including the power to sue and to be sued, to use a seal, and to delegate to its committees or to the faculty of the university, or to others, such authority or functions as it may deem wise. The Regents shall receive all funds derived from the sale of lands pursuant to the act of Congress of July 2, 1862, and any subsequent acts amendatory thereof. The university shall be entirely independent of all political or sectarian influence and kept free therefrom in the appointment of its regents and in the administration of its affairs, and no person shall be debarred admission to any department of the university on account of race, religion, ethnic heritage, or sex."

Cal.Rptr. 60]; *Ishimatsu v. Regents of University of California* (1968) 266 Cal.App.2d 854, 859-860 [72 Cal.Rptr. 756]; *Cal. State Employees' Assn. v. Regents of University of California* (1968) 267 Cal. App.2d 667, 671 [73 Cal.Rptr. 449].)

We recently pointed out "the University is intended to operate as independently of the state as possible. (See Cal. Const., art. IX, § 9.)" (*Regents of University of California v. Superior Court* (1976) 17 Cal. 3d 533, 537, fn. omitted [131 Cal.Rptr. 228, 551 P.2d 844].) In that case we concluded the university is so autonomous that, unlike other state agencies, it is subject to the usury laws then applicable to private persons and private universities. (17 Cal.3d at pp. 536-537.)

■ It is true the university is not completely free from legislative regulation. In addition to the specific provisions set forth in article IX, section 9, there are three areas of legislative regulation. First, the Legislature is vested with the power of appropriation, preventing the regents from compelling appropriations for salaries. (*California State Employees' Assn. v. Flournoy, supra*, 32 Cal.App.3d 219, 233; *California State Employees' Assn. v. State of California, supra*, 32 Cal.App.3d 103, 109-110.)

Second, it is well settled that general police power regulations governing private persons and corporations may be applied to the university. (*Regents of University of California v. Superior Court, supra*, 17 Cal. 3d 533, 536-537; *City Street Imp. Co. v. Regents* (1908) 153 Cal. 776, 778 et seq. [96 P. 801]; *Estate of Royer* (1899) 123 Cal. 614, 624 [56 P. 461].) For example, workers' compensation laws applicable to the private sector may be made applicable to the university.

Third, legislation regulating public agency activity not generally applicable to the public may be made applicable to the university when the legislation regulates matters of statewide concern not involving internal university affairs. (*Tolman v. Underhill* (1952) 39 Cal.2d 708, 712 [249 P.2d 280].)

■ Education Code section 92611 cannot be brought within any of the three categories. A provision requiring an employer to pay prevailing wages in the community does not constitute an appropriation bill. Moreover, the Legislature remains free to refuse to appropriate the money necessary to pay prevailing wages. (*California State Employees'*

*Assn.* v. *Flournoy, supra,* 32 Cal.App.3d 219, 233; *California State Employees' Assn.* v. *State of California, supra,* 32 Cal.App.3d 103, 109.)

Nor may section 92611 be construed as a general regulation pursuant to the police power applicable to private individuals and corporations. Prevailing wage regulations are substantially different from minimum wage statutes. A prevailing wage is in the nature of an average wage, and private persons and corporations will pay both above and below the average. Although, as petitioners point out, the Legislature and some local agencies have adopted statutes and ordinances requiring payment of prevailing wages by some governmental agencies and some of their contractors, a number of governmental agencies are not required to pay the prevailing wage. (*Bishop* v. *City of San Jose* (1969) 1 Cal.3d 56, 63 et seq. [81 Cal.Rptr. 465, 460 P.2d 137].) There is no showing that prevailing wage requirements have been made generally applicable to private persons and corporations.

Finally, our recent decision in *Sonoma County Organization of Public Employees* v. *County of Sonoma* (1979) 23 Cal.3d 296 [152 Cal. Rptr. 903, 591 P.2d 1], leads us to conclude a prevailing wage requirement is not a matter of statewide concern. In that case we held "the determination of wages paid to employees of charter cities as well as charter counties is a matter of local rather than statewide concern." *Sonoma* invalidated statutory provisions cutting off state appropriations to cities and counties giving wage raises to employees. (23 Cal.3d at p. 317.) We pointed out that the fact the Legislature had declared the matter to be one of statewide concern is not controlling. (23 Cal.3d at p. 316; *Bishop* v. *City of San Jose, supra,* 1 Cal.3d 56, 63.) Even before the 1970 constitutional amendment giving charter cities "plenary" authority over employee compensation, it was "held that the salaries of local employees of a charter city constitute municipal affairs and are not subject to general laws. [Citations.]" (23 Cal.3d at p. 317.)

A statute requiring payment of prevailing wages or more is effectively a salary setting statute. Public agencies' use of taxpayers' funds to pay in excess of a prevailing wage is unwarranted, and while the statute purports to establish a minimum wage, it in effect determines the wage. Like the statute in *Sonoma* which did not set actual wages but relied upon an extrinsic fact—prior wages—the statute now before us also relies upon an extrinsic fact—prevailing wages—to fix compensation. Although the Legislature has declared that the matter is one of

statewide concern (Stats. 1975, ch. 1218, § 3, pp. 3080-3081), the declaration is not controlling as pointed out in *Sonoma* (23 Cal.3d at p. 316).

Plaintiffs seek to distinguish *Sonoma* by noting that unlike cities and counties, the university possesses neither tax power nor delegated police power. However, the *Sonoma* decision was based not on existence of tax or delegated police power but on constitutional power in local authority, to the exclusion of legislative interference. As we have seen, article IX, section 9, establishing the independence of the university also curtails legislative power. Salary determination is as important to the autonomy of the university as it is to the independence of chartered cities and counties.

Plaintiffs also seek to distinguish *Sonoma* on the ground that legislation involved in that case affected all municipal employees, whereas section 92611 affects very few. Plaintiffs' quantum theory furnishes no basis for distinction.

The judgment of dismissal is affirmed.

Bird, C. J., Tobriner, J., Mosk, J., Richardson, J., Manuel, J., and Taylor, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.