Cathy **NEUSHUL, Plaintiff,**

v.

**The REGENTS OF the UNIVERSITY OF CALIFORNIA, Defendant.**

**Case No. CV 15–6286 FMO (ASx)**

United States District Court, C.D. California.

Signed March 11, 2016

Dan Siegel, Sonya Mehta, Siegel and Yee, Oakland, CA, for Plaintiff.

Jennifer M. Miller, Jonathan D. Miller, NYE Peabody Stirling Hale and Miller LLP, Santa Barbara, CA, for Defendant.

## ORDER RE MOTION TO DISMISS PLAINTIFF'S FOURTH CAUSE OF ACTION

Fernando M. Olguin, United States District Judge

Having reviewed and considered all the briefing filed with respect to The Regents of the University of California's ("defendant" or "Regents") Motion to Dismiss Plaintiff's Fourth Cause of Action for Violation of California Labor Code § 1102.5 Pursuant to FRCP Rule 12(b)(6) (Dkt.12, "Motion"), the court concludes that oral argument is not necessary to resolve the Motion, *see* Fed. R. Civ. P. 78; Local Rule 7–15; *Willis v. Pac. Mar. Ass'n*, 244 F.3d 675, 684 n. 2 (9th Cir.2001), and rules as follows.

### *INTRODUCTION*

Cathy Neushul ("plaintiff" or "Neushul") filed this action against the Regents and two individuals on August 18, 2015. (*See* Dkt. 1, Complaint at 1). Shortly thereafter, she filed her First Amended Complaint (Dkt.9, "FAC"), naming only the Regents, and alleging causes of action for: (1) retaliation, Title IX, 20 U.S.C. § 1681(a); (2) gender discrimination, Cal. Gov.Code § 12940(a); (3) retaliation, Cal. Gov.Code § 12940(h); (4) violation of California Labor Code § 1102.5; and (5) denial of the right to inspect records, Cal. Lab. Code § 1198.5. (*See id.* at ¶¶ 62–71). On October 7, 2015, the Regents filed the instant Motion seeking to dismiss Neushul's fourth cause of action.

### PLAINTIFF's ALLEGATIONS

Neushul is the former Head Coach of Women's Water Polo at the University of California at Santa Barbara ("UCSB"). (*See* Dkt. 9, FAC at ¶ 1). "In her tenure as Head Coach at UCSB, . . . Neushul was the most successful [Women's Water Polo ("WWP") ] Coach in program history. She led the team to the most consecutive winning seasons, holds the highest winning percentage in the history of the program, and in 2013, recruited the most talented freshman class in school history[.]" (*Id.* at ¶ 14).

According to plaintiff, during her time as Head Coach, she learned that "funding and staff allocation for the Women's program was not commensurate with the Men's." (Dkt. 9, FAC at ¶ 15). She raised this issue at various meetings in 2012 and 2013, and had a "reasonable belief that she was disclosing violations of Title IX." (*Id.* at ¶ 29; *see id.* at ¶¶ 16–18 & 20–29).

In September 2013, Neushul was demoted to second assistant coach of both WWP and Men's Water Polo ("MWP"). (*See* Dkt. 9, FAC at ¶ 31). In addition, the Director of Water Polo, Wolf Wigo ("Wigo"), terminated the WWP Assistant Coach, Connor Levoff ("Levoff"), by failing to renew his contract. (*See id.* at ¶ 34). Neushul alleges that the Regents then reduced her pay by $10,000, and Wigo used that money, and the money saved as a result of Levoff's termination, to retain an Assistant Coach for MWP, John Abdou ("Abdou"). (*See id.* at ¶ 35). Wigo informed plaintiff "that the new structure would be Wigo as Head Coach for MWP and WWP, Abdou as Associate Coach for both teams, and . . . Neushul as Assistant Coach for both teams." (*Id.* at ¶ 36). "Wigo could not explain . . . what [Neushul's] job duties would be[,]" and he informed her that she should "take a vacation and 'do nothing' until the WWP re-

turned, although the MWP was already in practice." (*Id.*).

In late September 2013, Wigo allegedly "informed the WWP team that he was interviewing for a new WWP Head Coach[,]" and directed Neushul to interview potential candidates. (Dkt. 9, FAC at ¶ 45). According to Neushul, she went so far as to offer to "give up her salary" if the UCSB Athletic Director Mark Massari ("Massari") "would separate the MWP and WWP because Wigo's direction was so disadvantageous to WWP." (*Id.* at ¶ 47). Massari informed Neushul that she was "valuable to the program and could be Head Coach of WWP again next year" (*id.* at ¶ 52), but also disclosed that Neushul had been "under investigation" by the Athletic Department since April 2013. (*See id.* at ¶ 51). He did not disclose the details of the investigation. (*See id.*).

In mid-October 2013, WWP training began. (*See* Dkt. 9, FAC at ¶ 54). Wigo allegedly "marginalized" Neushul by "texting her swim sets instead of speaking to her, and disallowed her any coaching duties." (*Id.*). The following day, Massari questioned Neushul "about a number of issues of supposed misconduct by her[.]" (*Id.* at ¶ 55). Finally, in November 2013, "exhausted by the inequity, abusive statements by Wigo, and in fear from the threat that Wigo would reduce her salary or terminate her altogether from the program," Neushul resigned. (*Id.* at ¶ 56).

Neushul subsequently filed the instant lawsuit, alleging, among other causes of action, that the Regents "retaliated against [her] for disclosing what she reasonably believed were violations of state and/or federal laws." (Dkt. 9, FAC at ¶ 69).

### LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of the claims asserted in the

complaint[.]" *Ileto v. Glock Inc.*, 349 F.3d 1191, 1199–2000 (9th Cir.2003), *cert. denied*, 543 U.S. 1050, 125 S.Ct. 865, 160 L.Ed.2d 770 (2005). A motion to dismiss for failure to state a claim should be granted if plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009); *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir.2011). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949; *Cook*, 637 F.3d at 1004; *Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 812 (9th Cir.2010).

In considering whether to dismiss a complaint, the court must accept the allegations of the complaint as true, *Erickson v. Pardus*, 551 U.S. 89, 93–94, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007); *Albright v. Oliver*, 510 U.S. 266, 268, 114 S.Ct. 807, 810, 127 L.Ed.2d 114 (1994), construe the pleading in the light most favorable to the pleading party, and resolve all doubts in the pleader's favor. *See Jenkins v. McKeithen*, 395 U.S. 411, 421–22, 89 S.Ct. 1843, 1849, 23 L.Ed.2d 404 (1969); *Berg v. Popham*, 412 F.3d 1122, 1125 (9th Cir.2005). Dismissal for failure to state a claim can be warranted based on either a lack of a cognizable legal theory or the absence of factual support for a cognizable legal theory. *See Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir.2008). If the pleading does not plausibly suggest an entitlement to relief, the Ninth Circuit has suggested that it is "unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir.2011), *cert. denied*, ⸺ U.S. ⸺, 132 S.Ct. 2101, 182 L.Ed.2d 882 (2012). If a claim for relief cannot be cured by amendment, it should be dismissed without affording leave to amend. *See Lucas v. Dep't of Corrs.*, 66 F.3d 245, 248 (9th Cir.1995).

## DISCUSSION

Defendant asserts that "claims for violation of the Labor Code, like that asserted by [Neushul], are subject to the Regents' administrative exhaustion requirements." (Dkt. 12, Motion at 5). Defendant points to *Campbell v. Regents of Univ. of Cal.*, 35 Cal.4th 311, 329–31, 25 Cal.Rptr.3d 320, 106 P.3d 976 (2005), in which the California Supreme Court held that an employee of the Regents was required to exhaust internal administrative remedies before filing suit for retaliation under California Labor Code § 1102.5.[1] It argues that under *Campbell*, Neushul cannot pursue her fourth cause of action for retaliation under California Labor Code § 1102.5 without exhausting the University of California's ("UC") administrative remedies. (*See* Dkt. 12, Motion at 5).

Plaintiff responds that an amendment to the California Labor Code, effective January 1, 2014, mandates the opposite result. (*See* Dkt. 15, Plaintiff's Opposition to Motion to Dismiss ("Opp.") at 7–11). The amendment, codified in California Labor Code § 244, provides that "[a]n individual is not required to exhaust administrative remedies or procedures in order to bring a civil action under any provision of this code, unless that section under which the action is brought expressly requires exhaustion of an administrative remedy." Cal. Lab.Code § 244(a). Since the *Campbell* decision was based in part upon the fact that "the legislative history appear[ed] unclear on the question [of exhaustion,]"

---

1. All section references are to the California Labor Code unless otherwise indicated.

see *Campbell,* 35 Cal.4th at 331, 25 Cal. Rptr.3d 320, 106 P.3d 976, plaintiff argues, the new § 244 clarifies legislative intent that "there is no exhaustion requirement." (*See* Dkt. 15, Opp. at 8).

Defendant maintains that § 244 was never intended to modify the requirement of exhaustion of administrative remedies for employees within the UC system. (*See* Dkt. 19, Reply to Plaintiff's Opposition to Motion to Dismiss ("Reply") at 3–4). Nevertheless, it argues, even if the court interprets § 244 to have eliminated the internal exhaustion requirement under the Regents' policies, "this would be a material change in the law because *Campbell* previously and conclusively held that internal exhaustion is required." (*Id.* at 4). Thus, as a material change in the law, "it could not be applied retroactively to rescue Plaintiff's claims, which would otherwise be barred under *Campbell.*" (*Id.*).

The parties' arguments boil down to two essential inquiries: first, did the 2014 amendments to the California Labor Code eliminate the UC policy exhaustion requirement and, if so, are the amendments a material change in the law such that they may not be applied retroactively to plaintiff's claim?

## I. WHETHER INTERNAL ADMINISTRATIVE EXHAUSTION IS REQUIRED.

### A. *Relevant Labor Code Provisions.*

California Labor Code § 1102.5 provides that no employer may retaliate against an employee for disclosing to a government or law enforcement agency information about violations of law or failure to comply with regulations. *See* Cal. Lab.Code § 1102.5(b). "For purposes of Labor Code sections 1102.5 to 1105, Labor Code section 1106 defines 'employee' as including employees of the University of California." *Campbell,* 35 Cal.4th at 329, 25 Cal. Rptr.3d 320, 106 P.3d 976; *see also* 3

Witkin, *Summary of California Law* § 349, at 445 (10th ed.2005) (noting that the protections of § 1102.5 "also apply to state and local government employees."). Section 1102.5 is silent with respect to exhaustion of administrative remedies. *See, generally,* Cal. Lab.Code § 1102.5.

Section 98.7 of the California Labor Code provides that "[a]ny person who believes that he or she has been discharged or otherwise discriminated against in violation of any law under the jurisdiction of the Labor Commissioner may file a complaint with the division within six months after the occurrence of the violation." Cal. Lab.Code § 98.7(a). Prior to 2014, no other applicable provision addressed the availability—or requirement—of exhaustion of administrative remedies. In October 2013, the California Legislature amended the Labor Code, adding two new provisions effective January 1, 2014. (*See* Labor & Employment—Licenses and Permits—Suspension or Revocation, 2013 Cal. Legis. Serv. Ch. 577, § 4, p. 5 (Cal. Lab.Code § 244); Labor & Employment—Compensation and Salaries—Complaint—Retaliatory Discharge, 2013 Cal. Legis. Serv. Ch. 732, § 3, pp. 5–7 (Cal. Lab.Code § 98.7). As noted above, § 244 provides in relevant part that "[a]n individual is not required to exhaust administrative remedies or procedures in order to bring a civil action under any provision of this code, unless that section under which the action is brought expressly requires exhaustion of an administrative remedy." Cal. Lab.Code § 244(a). The newly-enacted subdivision (g) of § 98.7 similarly provides that "[i]n the enforcement of this section, there is no requirement that an individual exhaust administrative remedies or procedures." Cal. Lab.Code § 98.7(g).

The clear import of these provisions is that if a plaintiff wishes to file a complaint in court, the plaintiff need not exhaust his

or her administrative remedies. *See* Cal. Lab.Code § 98.7(g); *see also Sheridan v. Touchstone Tel. Prods., LLC,* 241 Cal. App.4th 508, 517, 193 Cal.Rptr.3d 811 (2015) (exhaustion of the remedy provided by section 98.7 was not required, and the 201[4] enactments simply clarified this point."). Since 2014, courts have uniformly held that plaintiffs filing suit under provisions of the California Labor Code that do not contain explicit exhaustion requirements are not barred for lack of administrative exhaustion. *See, e.g., Satyadi v. W. Contra Costa Healthcare Dist.,* 232 Cal. App.4th 1022, 1032, 182 Cal.Rptr.3d 21 (2014) (exhaustion not required in § 1102.5 claim); *Sheridan,* 241 Cal.App.4th at 517, 193 Cal.Rptr.3d 811 (exhaustion not required in § 6310 claim); *Kappelman v. City & Cnty. of S.F.,* 2015 WL 6471184, *7 (N.D.Cal.2015) (same). As the Ninth Circuit has stated, the thrust of the 2014 amendments is that "one generally does not have to exhaust administrative remedies prior to filing a civil action for a violation of the California Labor Code." *Ramirez v. Cnty. of Marin,* 578 Fed.Appx. 673, 674 (9th Cir.2014).

Defendant argues that the legal framework described above does not apply "with respect to Labor Code § 1102.5 claims against the Regents[.]" (Dkt. 12, Motion at 4). According to defendant, the California Supreme Court's 2005 decision in *Campbell* establishes that claims for violation of Labor Code § 1102.5 are subject to the Regents' internal administrative exhaustion requirements. (*See id.* at 5). Plaintiff disagrees, arguing that *Campbell's* holding was dependent on the Labor Code's silence as to exhaustion, and now that the 2014 amendments are effective, she need not exhaust the internal remedies set forth in the Regents' policies. (*See* Dkt. 15, Opp. at 7–11).

### A. The Campbell Decision.

In *Campbell,* the plaintiff worked for the Regents as an architect. *See* 35 Cal.4th at 317, 25 Cal.Rptr.3d 320, 106 P.3d 976. Her job duties included reviewing architectural plans and specifications for certain campus construction projects. *See id.* She claimed that her supervisor, acting on the Regents' behalf, directed her to prepare bid documents that limited competition. *See id.* On several occasions, Campbell raised concerns that the bidding process prescribed by her supervisor would violate state competitive bidding laws, and she later reported the alleged violations to the Federal Bureau of Investigation ("FBI"). *See id.* After the FBI questioned UC officials about the alleged violations, the Regents changed Campbell's job duties, "assigning her to what she perceived to be menial, less challenging projects." *Id.* Shortly thereafter, she went on extended disability leave, and when she returned to work, she was discharged. *See id.*

After her discharge, Campbell filed an internal complaint against the UC and her supervisors under the grievance procedures set forth in the particular UC campus's personnel policies. *See Campbell,* 35 Cal.4th at 317, 25 Cal.Rptr.3d 320, 106 P.3d 976. The UC sent her a letter in response to her complaint, informing her that the procedure she used did not apply to her complaint. *See id.* at 318, 25 Cal. Rptr.3d 320, 106 P.3d 976. Instead, she was required to file her grievance under the UC's procedures for whistle blowing regarding state law violations. *See id.* Rather than refiling the complaint pursuant to that policy, Campbell filed a complaint in superior court, "seeking damages for retaliatory termination under Government Code section 12653 and Labor Code section 1102.5." *See id.* at 319, 25 Cal. Rptr.3d 320, 106 P.3d 976.

The California Supreme Court found that Campbell's claim was barred because she did not exhaust the administrative remedies set forth in the UC's procedure. *See Campbell*, 35 Cal.4th at 329–31, 25 Cal.Rptr.3d 320, 106 P.3d 976. The Court began by discussing the Regents' constitutional authority, noting that the Regents may "exercise quasi-legislative powers, subject to legislative regulation. Indeed, policies established by the Regents as matters of internal regulation may enjoy a status equivalent to that of state statutes." *Id.* at 320, 25 Cal.Rptr.3d 320, 106 P.3d 976 (internal quotation and alteration marks and citation omitted). Thus, an internal policy for handling whistleblower claims "is treated as a statute in order to determine whether the exhaustion doctrine applies." *Id.* at 321, 25 Cal.Rptr.3d 320, 106 P.3d 976. Of course, the Court noted that the Regents "are not entirely autonomous." *Id.* The legislature may regulate the Regents' actions in certain ways, such as through "statutes that express the state's general police power" that apply to the state as a whole. *See id.* (mentioning as an example the state's power to create laws regarding workers' compensation); *see also S.F. Labor Council v. Regents of Univ. of Cal.,* 26 Cal.3d 785, 789, 163 Cal. Rptr. 460, 608 P.2d 277 (1980) ("[I]t is well settled that general police power regulations governing private persons and corporations may be applied to the university."). The Court then addressed California's general rule of administrative exhaustion: "where an administrative remedy is provided by the statute, relief must be sought from the administrative body and this remedy exhausted before the courts will act." *Campbell,* 35 Cal.4th at 321, 25 Cal. Rptr.3d 320, 106 P.3d 976 (citing *Abelleira v. Dist. Ct. of Appeal,* 17 Cal.2d 280, 292, 109 P.2d 942 (1941). It analyzed the language of both of the statutes under which Campbell sought relief, *see id.* at 324, 25 Cal.Rptr.3d 320, 106 P.3d 976, and with

respect to § 1102.5, the Court noted the statute's silence with respect to administrative remedies, and ultimately concluded that "absent a clear indication of legislative intent, [the Court] should refrain from inferring a statutory exemption from our settled rule requiring exhaustion of administrative remedies." *Id.* at 333, 25 Cal. Rptr.3d 320, 106 P.3d 976; *see also Satyadi,* 232 Cal.App.4th at 1030, 182 Cal. Rptr.3d 21 (describing *Campbell* as having found "nothing in the language or legislative history of section 1102.5 and related provisions of the Labor Code that would justify departing from the ordinary requirement of exhaustion of administrative remedies.").

### B. *The Effect of the 2014 Amendments on Campbell.*

■ *Campbell* was decided in 2005, and plaintiff argues that the California Supreme Court's reasoning, which was "dependent on [§ 1102.5's] silence as to exhaustion" (*see* Dkt. 15, Opp. at 7), is no longer applicable given the explicit language of the 2014 amendments. (*See id.* at 7–14); *see also* Cal. Lab.Code § 244 ("[a]n individual is not required to exhaust administrative remedies ... to bring a civil action under any provision of this code, unless that section under which the action is brought expressly requires exhaustion"). Defendant disagrees, arguing that "prior to the enactment of Labor Code § 244 there were two forms of administrative exhaustion that were considered prerequisites for a Regents' employee to pursue a cause of action for violation of Labor Code § 1102.5: 1) *internal exhaustion* under the Regents' policies and procedures, and 2) *external exhaustion* with the Labor Commissioner pursuant to Labor Code § 98.7." (*See* Dkt. 12, Motion at 1) (emphasis in original). According to defendant, § 244 "was enacted specifically to resolve ... whether external administra-

tive exhaustion was required with the California Labor Commissioner." (*Id.* at 8). Thus, defendant asserts, "[t]he passage of Labor Code § 244[ ] was in no way meant to obviate the internal administrative exhaustion requirements set forth in *Campbell.*" (*Id.*; *see also* Dkt. 19, Reply at 2 ("all Labor Code § 244 did was clarify existing law regarding external exhaustion of administrative remedies with the Labor Commissioner under Labor Code § 98.7.")).

Defendant contends that there is a distinction between administrative exhaustion with the Labor Commissioner pursuant to § 98.7 and administrative exhaustion pursuant to the Regents' own policies, and that the amended to § 244 has no impact on the distinction. (*See* Dkt. 19, Reply at 2–3). The court is unpersuaded, however, by defendant's argument with respect to the impact of § 244 on the UC policy requirement, or "internal exhaustion." As the *Campbell* Court made clear, a 1992 amendment to the Labor Code explicitly made § 1102.5 applicable to individuals employed by the UC. *See* 35 Cal.4th at 330, 25 Cal.Rptr.3d 320, 106 P.3d 976 (the provision "was intended to extend the rights available to private employees to include public employees"). Now, pursuant to the language of § 244, those rights available to private employees include the right to bring a civil action under § 1102.5 without first being "required to exhaust administrative remedies or procedures[.]" *See* Cal. Lab.Code § 244. Thus, the reason that the *Campbell* Court reached the decision it did—that there was not "a clear indication of legislative intent" to infer an exemption from the exhaustion rule,[2] *see Campbell*, 35 Cal.4th at 333, 25 Cal.Rptr.3d 320, 106 P.3d 976—no longer holds true.

Plaintiff sues under § 1102.5, which explicitly applies to her as a UC employee and which contains no exhaustion requirement. *See* Cal. Lab.Code §§ 1102.5 & 1106. And § 244 now provides that if no exhaustion requirement is explicitly set forth in the relevant provision of the Labor Code, including § 1102.5, then the plaintiff may pursue her claim without exhausting administrative remedies. In other words, the amendment of § 244 in 2014 necessarily means that UC policies requiring administrative exhaustion for claims arising under § 1102.5 are contrary to the Labor Code's clear directive that employees pursuing such claims are "not required to exhaust administrative remedies or procedures[.]" Cal. Lab.Code § 244(a).

Whether exhaustion is internal within the UC or through the Labor Commissioner, the Labor Code now says—in no uncertain terms—that exhaustion is not required. *Cf. Campbell*, 35 Cal.4th at 329, 25 Cal.Rptr.3d 320, 106 P.3d 976 (recognizing that courts may "presume the Legislature in the enactment of statutes" intended to change the law—here, a UC policy—when "that intention is made clearly to appear either by express declaration or by necessary implication."); *Kappelman*, 2015 WL

2. Recent decisions of the California Court of Appeal have noted that the *Campbell* decision turned on the lack of legislative intent to the contrary. *See, e.g., Sheridan*, 241 Cal.App.4th at 514–15, 193 Cal.Rptr.3d 811 ("Because the policy required the use of administrative procedures and the statutes did not evince legislative intent to abrogate the exhaustion requirement, the court affirmed the judgment dismissing plaintiff's suit for failure to exhaust her administrative remedies."); *Satya-*

*di*, 232 Cal.App.4th at 1030, 182 Cal.Rptr.3d 21 ("It found nothing in the language or legislative history of section 1102.5 and related provisions of the Labor Code that would justify departing from the ordinary requirement of exhaustion of administrative remedies. The court therefore held that Campbell should have exhausted the university's administrative remedies before proceeding to suit.") (internal quotation marks and citations omitted).

6471184 at *7 (finding that a government employee's retaliation claim under Cal. Lab.Code § 6310 was not barred by his failure to file an administrative claim under the Government Claims Act because § 6310 is silent as to administrative remedies and the 2014 amendments "effectively overrul[ed] *Campbell.*"). Although the *Campbell* Court's analysis was motivated in part by the fact that the Regents' policies may have the force of statute, that the legislature saw fit to make § 1102.5 applicable to UC employees through § 1106 means that it falls within one of the three categories in which the Regents "are subject to legislative regulation." *See People v. Lofchie,* 229 Cal.App.4th 240, 250, 176 Cal.Rptr.3d 579 (2014) (discussing the principle that police power regulations governing private persons may be made applicable to the UC). As the *Lofchie* court summarized, "[f]irst, the Legislature is vested with the power of appropriation, preventing the regents from compelling appropriations for salaries. Second, it [is] well settled that general police power regulations governing private persons and corporations may be applied to the university. For example, workers' compensation laws applicable to the private sector may be made applicable to the university. Third, legislation regulating public agency activity not generally applicable to the public may be made applicable to the university when the legislation regulates matters of statewide concern not involving internal university affairs." 229 Cal.App.4th at 250, 176 Cal.Rptr.3d 579 (citing *S.F. Labor Council,* 26 Cal.3d at 789, 163 Cal. Rptr. 460, 608 P.2d 277.

Defendant spends a good portion of its Reply arguing that the *Campbell* decision is still good law and that it has not been superseded by the subject amendments to the Labor Code. (*See, e.g.,* Dkt. 19, Reply at 9–10) ("Westlaw's reference to 'Superseded by Statute as Stated in *Reynolds [v. City & Cnty. of San Francisco,* 576 Fed.

Appx. 698 (9th Cir.2014)]' simply means that the external exhaustion argument under Labor Code § 98.7 is no longer permissible.... *Reynolds* does not address or make any holding in regard to the Regents' internal exhaustion requirements as set forth [ ] in *Campbell.* Thus, *Campbell* remains in full force and effect confirming the Regents' internal exhaustion requirements apply to Section 1102.5 claims."). Defendant's argument is unpersuasive.

As an initial matter, it is worth noting that even the leading treatise on California law has called into question the viability of *Campbell* in light of the subject amendments:

> In 2013, the Legislature enacted Lab.C. 244(a), providing that an individual is not required to exhaust administrative remedies or procedures in order to bring a civil action under any provision of the Labor Code, unless the statute under which the action is brought expressly requires exhaustion of an administrative remedy. (Lab.C.244(a); see Supp., supra, § 317.) The enactment of the statute calls into question the continuing viability of the holding in *Campbell,* because Lab.C. 1102.5 does not expressly require that administrative remedies be exhausted before a civil action may be filed.

3 Witkin, *Summary of California Law,* 2015 Supplement, § 349, at 119.

In addition, the amendment provides that exhaustion is not required to pursue a claim under Labor Code § 1102.5 "unless that section under which the action is brought expressly requires exhaustion of an administrative remedy." Cal. Lab. Code § 244(a). Defendant has not pointed to another section of the Labor Code that requires plaintiff to exhaust her administrative remedies before pursuing her claim

under § 1102.5.[3] Under defendant's interpretation, the Regents—who "are not entirely autonomous" and "exercise quasi-legislative powers, subject to legislative regulation," *Campbell*, 35 Cal.4th at 320–21, 25 Cal.Rptr.3d 320, 106 P.3d 976—have the authority to impose an exhaustion requirement on an a state employee who seeks to pursue a claim under § 1102.5, notwithstanding the fact that the legislature expressly rejected the exhaustion requirement. Further, to the extent the legislature decided to remove the exhaustion of remedies barrier for all employees in California who seek to pursue a claim under § 1102.5, defendant's interpretation would result in UC employees being treated less favorably than other employees in the state because only they would have to overcome the exhaustion barrier to pursue a claim under § 1102.5. There is no support in the text, legislative history, or any post–2014 California or federal case law, to support such an interpretation. For these reasons, the court finds that Neushul was not required to pursue the Regents' internal administrative remedies before filing her claim.

## II. WHETHER THE 2014 AMENDMENTS APPLY TO PLAINTIFF RETROACTIVELY.

■ Defendant argues that "Labor Code § 244(a) went into law on January 1, 2014. The conduct alleged by Plaintiff in the [FAC] all occurred prior to the enactment of Section 244(a). Thus, . . . Section 244(a) cannot be applied retroactively to the allegations in the complaint[.]" (Dkt. 19, Reply at 7). Defendant and plaintiff both argue at length about the effect of § 244, and whether it meets the standard set forth in *McClung v. Emp't Dev. Dept.*, 34 Cal.4th 467, 475, 20 Cal.Rptr.3d 428, 99 P.3d 1015 (2004), for retroactive application of legislative amendments. (*See id.* at 7–8; Dkt. 24, Defendant's Supplemental Brief Re: Retroactivity ("Dft.Supp.Br."); Dkt. 26, Plaintiff's Supplemental Brief re: Retroactivity ("Pltf.Supp.Br.")).

■ "A statute is applied retroactively only if it changes the legal consequences of an act *completed* before the effective date of the statute." *Florence W. Med. Clinic v. Bonta*, 77 Cal.App.4th 493, 503, 91 Cal.Rptr.2d 609 (2000) (emphasis in original). In other words, "a statute is not made retroactive merely because it draws upon facts existing prior to its enactment. Instead, the effect of [statutes addressing procedures to be utilized in legal proceedings] is actually prospective in nature since they relate to the procedure to be followed in the future." *Tapia v. Super. Ct.*, 53 Cal.3d 282, 288, 279 Cal.Rptr. 592, 807 P.2d 434 (1991) (internal quotation and alteration marks and citation omitted); *see id.* at 289, 279 Cal.Rptr. 592, 807 P.2d 434 ("a law governing the conduct of trials is being applied 'prospectively' when it is applied to a trial occurring after the law's effective date, regardless of when . . . the underlying cause of action arose."). Thus, defendant's argument that "[t]he conduct alleged . . . in the [FAC] all occurred prior to the enactment of Section 244(a)" (Dkt. 19, Reply at 7) is irrelevant.[4]

---

3. If the California Legislature wanted to exempt UC employees and still require them to exhaust their administrative remedies, it could have done so, as it did with respect to individuals who seek to pursue claims under the Private Attorney General's Act, Cal. Lab. Code §§ 2699, *et seq. See* Cal. Labor Code § 244(a) ("This subdivision shall not be construed to affect the requirements of Section 2699.3.").

4. Defendant assumes, without providing any authority, (*see* Dkt. 12, Motion at 9–10) that the benchmark for determining retroactivity is when the conduct occurred as opposed to when the lawsuit was filed. (*See id.* at 10) (noting that defendant's alleged conduct occurred in 2012 and 2013, but citing no case law supporting defendant's retroactivity requirement). It was incumbent upon defendant, as the moving party, to explain and provide authority for its assertion that the

To be sure, plaintiff alleges discriminatory conduct, adverse employment action, and constructive termination that occurred in 2012 and 2013. (*See* Dkt. 9, FAC at ¶¶ 15–56). However, she filed her lawsuit in August 2015. (*See* Dkt. 1, Complaint). At that time, § 244 had been in effect for nearly two years. Thus, application of the amendment to plaintiff's claim is not retrospective. *See, e.g., In re Vaccine Cases,* 134 Cal.App.4th 438, 456, 36 Cal.Rptr.3d 80 (2005) (finding that a party making a similar argument had "overlook[ed] the fact that [the amendment] does not change the legal effects of past events in the sense necessary to conclude that such a statutory amendment operates retrospectively.") (internal alteration, quotation marks and citations omitted). The amendment to the Labor Code, eliminating the requirement for UC employees to exhaust administrative remedies in § 1102.5 cases, is procedural; "it affects the conduct of litigation rather than changing the legal consequences of past conduct by imposing new or different liabilities based upon such conduct." *Id.* (internal quotation marks and citation omitted). If "a lawsuit is governed by a change in procedural rules made during its pendency," *see Republic Corp. v. Super. Ct.,* 160 Cal. App.3d 1253, 1257, 207 Cal.Rptr. 241 (1984), the same rule "must necessarily apply to a complaint not yet filed when the amendment took effect." *In re Vaccine Cases,* 134 Cal.App.4th at 456, 36 Cal. Rptr.3d 80.

### CONCLUSION

Based on the foregoing, IT IS ORDERED THAT defendant's Motion to Dismiss (**Document No. 12**) is **denied.** Defendant shall file its Answer to the First Amended Complaint no later than **March 21, 2016.**

---

retroactivity analysis in this case should be determined on the basis of when the alleged conduct occurred.