[No. B196933. Second Dist., Div. Four. Aug. 13, 2008.]

Estate of THRESIAMMA THOTTAM, Deceased.
ELIZABETH THOTTAM et al., Petitioners and Respondents, v.
PETER THOTTAM, Objector and Appellant.

COUNSEL

Orren & Orren, Tyna Thall Orren and Lowell H. Orren for Objector and Appellant.

Hicks, Mims, Kaplan & Burns, Stephen L. Kaplan and Stewart S. Mims for Petitioner and Respondent Jameson Thottam.

Resch Polster & Berger and Andrew V. Jablon for Petitioner and Respondent Elizabeth Thottam.

OPINION

**EPSTEIN, P. J.**—In this case, we consider the admissibility of a document prepared during mediation under the exception to mediation confidentiality set out in Evidence Code section 1123, subdivision (c).[1] We find the exception applies, and reverse the judgment.

## FACTUAL AND PROCEDURAL SUMMARY

Following the death of Thresiamma Thottam, disputes arose among her three children, Peter, Jameson, and Elizabeth, regarding the distribution of assets from her estate and from a trust in which the siblings were cotrustees and beneficiaries (the JPL Trust). The siblings agreed to participate in "an all-day discussion" in an attempt to resolve their disagreements.

At the start of the August 22, 2004 mediation, Peter, Jameson, and Elizabeth signed a mediation and facilitation confidentiality agreement, under

---

[1] All statutory references are to the Evidence Code unless otherwise indicated.

which they agreed that "all matters discussed, agreed to, admitted to, or resulting from" the mediation would "(1) be kept confidential and not disclosed to any outside person (excluding spouses), (2) shall not be used in any current or future litigation between us (except as may be necessary to enforce any agreements resulting from the Meeting), and (3) shall be considered privileged and, as a settlement conference, non-admissible under the California Evidence Code in any current or future litigation between us." The agreement was signed by the three siblings and by the mediator.

During the mediation session, a document in chart form (the chart) was prepared. Listed along the left-hand margin of the chart, in abbreviated form, were various pieces of real estate and other assets. Across the top of the chart were three columns, labeled with the first initial of each sibling. The chart was filled in to designate specific allocations of the listed assets. One of the asset entries was for property designated as "Pearblossom." It was allocated 100 percent to Peter, with no entry in the columns for Jameson and Elizabeth. The siblings each signed and dated the top of the chart in the column with his or her initial, and initialed each entry in that column.

Peter prepared a document, dated September 6, 2004, which purported to be a working draft of the "Co-Trustee Estate Distribution Agreement." This document incorporated the chart prepared during mediation and addressed other issues with respect to the property distribution. Neither Elizabeth nor Jameson signed this document.

Peter prepared a second document, dated October 10, labeled "Updated Formalization of Contract to Exchange and Purchase Vacant & Commercial Land Interests." This, too, incorporated the chart prepared during mediation. Elizabeth and Jameson refused to sign this document, and their separate e-mail correspondence to Peter indicated they each took the position that there was no agreement reached on August 22, 2004.

On December 27, 2004, Peter filed an action for breach of contract against Jameson and Elizabeth, individually and as cotrustees (*Thottam v. Thottam* (Super. Ct. L.A. County, 2006, No. BC326453); the civil action). He sought specific performance of the signed agreement dated August 22, 2004. Attached to his complaint were copies of the chart, the unsigned September 6, 2004 document, and the unsigned October 10, 2004 document. In his first

amended complaint, filed April 20, 2005, Peter added causes of action for breach of oral contract, breach of the implied covenant of good faith and fair dealing, declaratory relief, and promissory estoppel.

Meanwhile, on February 25, 2005, Elizabeth filed a petition in the probate department as personal representative of the Estate of Thresiamma Thottam (L.A. Super. Ct., No. BP090593; the estate action). The petition alleged that decedent mistakenly had transferred certain pieces of real property to each of the children, when her intent was to transfer them into the JPL Trust to be shared equally among the children. Petitioner sought an order directing Peter and Jameson to transfer the specified property to the estate. In the alternative, she asked the court to impose a constructive trust or a resulting trust for the benefit of the estate.

On March 30, 2005, and July 7, 2005, Elizabeth filed petitions in the probate department as beneficiary and cotrustee of the JPL Trust (*In re JPL Trust* (Super. Ct. L.A. County, 2006, No. BP091185); the trust action). The March petition alleged that Elizabeth and Jameson, as a majority of the adult beneficiaries of the JPL Trust, had voted to remove Peter as cotrustee. It also alleged that from January 2001 to the present, Peter had acted independently of the other trustees and for his own benefit by collecting rents and profits from the trust real property located in Pearblossom, and that he had breached his fiduciary duty as cotrustee by failing to pay taxes on the Pearblossom property. Petitioner sought an order confirming Peter's removal as cotrustee and directing Peter to fully account for rents and profits collected from the trust property and for expenses paid for the benefit of the trust. Petitioner sought sanctions from Peter based on his alleged misconduct and breach of fiduciary duty.

The July petition sought an order for return of the Pearblossom property to the JPL Trust under Probate Code section 850, subdivision (a)(3). It also sought an order directing Peter to render an accounting related to that property, and an assessment of double damages against Peter pursuant to Probate Code section 859.

On June 20, 2005, during her deposition in the civil case, Elizabeth refused to answer Peter's questions regarding the chart created during the August 22, 2004 mediation, and regarding conversations related to the chart which took place during the mediation. Elizabeth moved for a protective order seeking to avoid disclosure of the chart or conversations which took place during the mediation. Peter moved to compel Elizabeth's deposition testimony with regard to the chart.

The motion to compel was heard by Judge Kenneth Freeman on August 23, 2005. Under section 1123, subdivision (c), a written settlement agreement prepared in mediation is not made inadmissible or protected from disclosure if signed by the parties and "[a]ll parties to the agreement expressly agree in writing . . . to its disclosure." Judge Freeman found this exception to the mediation privilege was satisfied by the mediation and facilitation confidentiality agreement. That agreement, signed by the parties, stated that all matters discussed or agreed to in the mediation would be kept confidential and not disclosed, and not used in any litigation among them "(except as may be necessary to enforce any agreements resulting from the Meeting) . . . ."

The court explained: "[W]hether or not the alleged contract in fact constitutes a contract is the basis for plaintiff's cause of action. The court cannot make a finding as to whether the document constitutes a contract. That's a matter for summary adjudication, which is not now before the court. For the purpose of this motion, the court is presented with the issue of whether the defendant is bound to give testimony as to the document. The deponent Elizabeth Thottam, as well as Jameson Thott[am] and Peter Thottam each signed a mediation and facilitation confidentiality agreement consenting to disclosure as may be necessary to enforce any agreements. That document permits disclosure of 'all matters discussed, agreed to, admitted to, or resulting from the Mediation/Facilitation Discussion Meeting held with John W. Prager.' " The court granted Peter's motion to compel, and vacated the hearing date for Elizabeth's motion for protective order.

Three days later, Elizabeth filed a notice of related actions in the civil action, pursuant to California Rules of Court, rule 804. She stated that the pending civil action, estate action, and trust action all involved the same parties, issues, and property, and asked that they be assigned to a single judge to avoid unnecessary costs or delay. Peter opposed relating the civil case with the probate court matters, noting that discovery was proceeding in the civil case with trial set for December 14, 2005. After hearing in the probate department, Judge Thomas Stoever vacated the trial date in the civil action, ordered all three actions to proceed in the probate department, and designated the estate action as the lead case.

Trial commenced before Judge James Satt on April 10, 2006. Elizabeth brought an in limine motion to preclude Peter from introducing the chart prepared during mediation as a trial exhibit. The court denied the motion for lack of proper notice.

On the third day of trial, during his direct testimony about the mediation, Peter sought to introduce the chart. Elizabeth objected, asserting it was protected by mediation confidentiality. After hearing argument and considering supplemental briefing, Judge Satt expressly disagreed with Judge Freeman's earlier ruling that the parties had consented in writing to disclosure of the chart. Judge Satt held that the exception to mediation confidentiality under section 1123, subdivision (c) was not satisfied, and that the chart was thus inadmissible. Peter challenged that ruling by petition for writ of mandate, which was denied.

Trial on the three actions resumed. At the end of trial, the petition in the estate action was withdrawn, and the trust action became the lead case. The court entered judgment against Peter and in favor of Elizabeth and Jameson in the civil action. In the trust action, the court found that Peter had been effectively removed as a cotrustee of the trust; that while acting as a cotrustee, he had breached his fiduciary duties by collecting rents from the Pearblossom property, failing to pay any portion of those rents to his cobeneficiaries, and failing to account for the rents; and that after his removal as a cotrustee, he had wrongfully executed trustee's deeds transferring title to the Pearblossom property and to two other properties to himself as an individual. The court ordered Peter to cease collecting rents on the Pearblossom property and return the rents previously collected; reconvey the Pearblossom property and the other two properties to the trust; and pay twice the value of the rents and properties to the trust as damages under Probate Code section 859. Peter filed timely appeals from the judgments in the civil and trust actions; the appeals were ordered consolidated in this court under case No. B196933.

## DISCUSSION

Appellant claims the mediation and facilitation confidentiality agreement signed by the parties during mediation satisfied the exception to mediation confidentiality under section 1123, subdivision (c). Although a trial court's ruling on the admissibility of evidence is generally reviewed for abuse of discretion, the issue here involves the proper construction and application of section 1123, subdivision (c). This is a question of law which we review de novo. (See *Zhou v. Unisource Worldwide* (2007) 157 Cal.App.4th 1471, 1476 [69 Cal.Rptr.3d 273].)

Mediation confidentiality is set out in section 1119, which provides in pertinent part: "Except as otherwise provided in this chapter: [¶] . . . [¶]

(b) No writing . . . that is prepared for the purpose of, in the course of, or pursuant to, a mediation or a mediation consultation, is admissible or subject to discovery, and disclosure of the writing shall not be compelled, in any arbitration, administrative adjudication, civil action, or other noncriminal proceeding in which, pursuant to law, testimony can be compelled to be given."

■ "[T]he mediation confidentiality provisions of the Evidence Code were enacted to encourage mediation by permitting the parties to frankly exchange views, without fear that disclosures might be used against them in later proceedings. (*Rojas v. Superior Court* (2004) 33 Cal.4th 407, 415–416 [15 Cal.Rptr.3d 643, 93 P.3d 260]; *Foxgate Homeowners Assn. v. Bramalea California, Inc.* (2001) 26 Cal.4th 1, 14 [108 Cal.Rptr.2d 642, 25 P.3d 1117].)" (*Fair v. Bakhtiari* (2006) 40 Cal.4th 189, 194 [51 Cal.Rptr.3d 871, 147 P.3d 653].) For that reason, the statutory scheme unqualifiedly bars disclosure of communications made during mediation absent an express statutory exception. (*Simmons v. Ghaderi* (2008) 44 Cal.4th 570, 582 [187 P.3d 934]; see also *Wimsatt v. Superior Court* (2007) 152 Cal.App.4th 137, 162 [61 Cal.Rptr.3d 200].)

The exception on which appellant relies is section 1123. Under this section, "[a] written settlement agreement prepared in the course of, or pursuant to, a mediation, is not made inadmissible, or protected from disclosure, by provisions of this chapter if the agreement is signed by the settling parties and any of the following conditions are satisfied: [¶] (a) The agreement provides that it is admissible or subject to disclosure, or words to that effect. [¶] (b) The agreement provides that it is enforceable or binding or words to that effect. [¶] (c) All parties to the agreement expressly agree in writing, or orally in accordance with Section 1118, to its disclosure. [¶] (d) The agreement is used to show fraud, duress, or illegality that is relevant to an issue in dispute."

Appellant's position is that the chart constitutes a written settlement agreement. It is undisputed that the chart contains no explicit language stating that it is admissible or subject to disclosure within the meaning of section 1123, subdivision (a), nor any language providing that it is enforceable or binding within the meaning of section 1123, subdivision (b). Nor was appellant seeking to use the chart to show fraud, duress or illegality. (§ 1123, subd. (d).) Admissibility of the chart thus depends on the existence of an express agreement by the parties to its disclosure under section 1123, subdivision (c).

Respondents argued, and the trial court found, that the mediation and confidentiality agreement did not satisfy section 1123, subdivision (c) because it was executed before the parties allegedly entered into a settlement agreement. The court's position was that the exception would only be satisfied if the disclosure agreement was executed after the parties had reached a settlement. We disagree.

Subdivision (a) of section 1123 requires that the settlement agreement itself provide that the agreement is admissible or subject to disclosure; section 1123, subdivision (b) requires that the agreement itself provide that it is enforceable or binding. In contrast, there is nothing in section 1123, subdivision (c) requiring that the express agreement in writing permitting disclosure be contained in the settlement agreement. Nor is there a requirement that the agreement regarding disclosure be made at or after the time of the settlement. The court erred in reading a timing requirement into section 1123, subdivision (c).

We turn to the language of the mediation and facilitation confidentiality agreement. As we have discussed, the agreement signed by Peter, Elizabeth and Jameson provided that the three siblings "mutually agree that all matters discussed, agreed to, admitted to, or resulting from the Mediation/Facilitation Discussion Meeting held with Mr. John W. Prager, Jr., Esq. on the above date shall (1) be kept confidential and not disclosed to any outside person (excluding spouses), (2) shall not be used in any current or future litigation between us *(except as may be necessary to enforce any agreements resulting from the Meeting)*, and (3) shall be considered privileged and, as a settlement conference, non-admissible under the California Evidence Code in any current or future litigation between us. These commitments may be waived or modified by the subsequent written consent only of all three of us." (Italics added.)

The parties signed this agreement at the outset of settlement discussions, prior to the alleged settlement. The agreement affirmed the confidentiality of the mediation "except as may be necessary to enforce any agreements resulting from the Meeting . . . ." Appellant's civil action was brought to enforce what he claims is a settlement agreement reached in mediation. This is precisely the use addressed by the exception to the mediation privilege contained in the parties' written agreement. The mediation and facilitation confidentiality agreement satisfies the exception to mediation confidentiality under section 1123, subdivision (c).

■ The second question is whether appellant established the preliminary fact that the chart is a "written settlement agreement" within the meaning of section 1123. "A settlement agreement is a contract, and the legal principles which apply to contracts generally apply to settlement contracts." (*Weddington Productions, Inc. v. Flick* (1998) 60 Cal.App.4th 793, 810–811 [71 Cal.Rptr.2d 265].) An essential element is mutual consent, which is determined by objective rather than subjective criteria. (*Id.* at p. 811.) "If there is no evidence establishing a manifestation of assent to the 'same thing' by both parties, then there is no mutual consent to contract and no contract formation. (Civ. Code, §§ 1550, 1565 & 1580.)" (*Ibid.*)

■ The material terms of a proffered contract must be sufficiently certain to provide a basis for determining what obligation the parties have agreed to. (*Weddington Productions, Inc. v. Flick, supra*, 60 Cal.App.4th at pp. 811–812.) "There are occasions in which 'minor matters' in elaborate contracts are left for future agreement. When this occurs, it does not necessarily mean that the entire contract is unenforceable." (*Id.* at p. 813.)

Applying these principles, we conclude there was sufficient evidence before the court to establish the preliminary fact that the chart created at the mediation is a settlement agreement. The parties to the agreement are identified, by initial and by signature, as Jameson, Peter, and Elizabeth Thottam.

The items on the chart, while lacking in formality, are sufficiently clear to determine the obligations to which the parties agreed. There are no complete sentences, nor formal descriptions of the assets being addressed, but the assets are named in a shorthand, which apparently was understood by the parties. For example, real properties are designated as "Moreno," "Pinion Hills," "Pearblossom," "House," "Large BG," "Small Beverly Glen," and "160 Acre lots." Respondents complain about the lack of formal description of these properties, but make no claim they could not identify the properties by the short descriptions.

The remaining items on the chart were "Cash," "B-School," and "Other Assets." It is unclear from the listing what cash was to be included, but the distribution columns under each initial provide specific amounts. In his first amended complaint in the civil action, Peter explains that "B-School" refers to Jameson's business school tuition; this explanation is not disputed. Least clear is the "Other Assets" listing. The only specific assets mentioned on the chart in that category are plots (presumably burial plots), jewelry, and a car; these were allocated among the parties; 33 percent of whatever remained in that category was to be given to each party.

■   While not a model of clarity, this chart provides sufficient information about allocation of assets to indicate the intended obligations of the parties. And each block of the chart indicating distribution to one of the parties was initialed by that party, reflecting an understanding and agreement as to the listing and the allocation. Whether or not the document contained all necessary details for enforcement, it certainly contained adequate manifestation of mutual consent to material terms which were capable of being made certain. Without deciding its enforceability, we conclude that the chart constitutes a written settlement agreement for purposes of section 1123, subdivision (c).[2]

Respondents assert the trial court found against Peter on the foundational fact that the chart constituted a written settlement agreement for purposes of the exception to mediation confidentiality. The court's ruling on admissibility of the chart was based on its conclusion that the mediation and facilitation confidentiality agreement did not comply with section 1123, subdivision (c) because it was signed before the alleged settlement agreement, not at the same time or after. The court did not rule that the chart was not a contract, nor did it base its evidentiary ruling on Peter's credibility. It excluded the chart because it found the mediation confidentiality agreement did not satisfy section 1123, subdivision (c). At the conclusion of trial, the court did make a finding that "Peter Thottam's testimony during the trial and his deposition were in conflict and were not credible. The Court finds that Peter Thottam's testimony during the trial to be dishonest." But this finding was made without the benefit of the alleged settlement agreement, which had the potential to corroborate Peter's testimony. It was not the basis for the ruling excluding the chart during trial.

We turn to the question of prejudice. Error in excluding evidence is a ground for reversing a judgment only if the error resulted in a miscarriage of justice, and that a different result would have been probable if the error had

---

[2] *Fair v. Bakhtiari, supra,* 40 Cal.4th 189, does not require a different result. It addresses the requirement for admissibility under section 1123, subdivision (b) that the agreement provide "that it is enforceable or binding or words to that effect." The mediation document at issue in *Fair* was a handwritten single-page memorandum, captioned "Settlement Terms" which provided: "Any and all disputes subject to JAMS [(Judicial Arbitration and Mediation Services)] arbitration rules." (40 Cal.4th at pp. 192–193, fn. 2.) The court explained that "the writing must make clear that it reflects an agreement and is not simply a memorandum of terms for inclusion in a future agreement. The writing need not be in finished form to be admissible under section 1123, subdivision (b), but it must be signed by the parties and include a direct statement to the effect that it is enforceable and binding." (*Id.* at p. 192.) The Supreme Court held that section 1123, subdivision (b) "leaves room for various formulations. However, arbitration clauses, forum selection clauses, choice of law provisions, terms contemplating remedies for breach, and similar commonly employed enforcement provisions typically negotiated in settlement discussions do not qualify an agreement for admission under section 1123(b)." (40 Cal.4th at p. 200, fn. omitted.) Our case involves admissibility under section 1123, subdivision (c), which does not contain the same requirement.

not occurred. (*Zhou v. Unisource Worldwide, supra,* 157 Cal.App.4th at p. 1480; see also Cal. Const., art. VI, § 13.) We find the requisite prejudice in this case.

Appellant's civil action alleged breach of written and oral contract, premised on the existence of a settlement agreement resulting from the August 22, 2004 mediation, and promissory estoppel, based on promises made on that date. The chart, signed and initialed by each of the parties, was allegedly the written memorialization of their agreement. Although lacking in details, the chart set out basic terms which, with the addition of parol evidence, were capable of being made certain. But absence of the chart or any evidence about its preparation eviscerated appellant's case. It left him only with his own testimony that there was an agreement, and that of his cousin and former trustee, Jose Varkey, whose testimony was very confusing because he spoke English with difficulty. This was weighed against the testimony of respondents that no agreement was reached. Had the chart been admitted, the court could have found that it corroborated Peter's version of events, and thus may have found his testimony regarding the existence of an agreement to be credible. This could have resulted in a favorable judgment in his civil action. Instead, the court found Peter could not prove the existence of an agreement or promises in the civil action because there was no admissible evidence of an agreement, and thus entered judgment against Peter.

It is also reasonably probable that admission of the chart would have resulted in a more favorable judgment in the trust action. That action arose in large part from appellant's conduct with respect to the Pearblossom property. If appellant were able to prove the existence of a settlement agreement, his transfer of that property to himself would not constitute a breach of fiduciary duty and he also would be entitled to collect and keep the rental income. This evidence also could have rebutted the allegation that Peter acted in bad faith, which resulted in the court's imposition of additional damages under Probate Code section 859. Exclusion of the August 22, 2004 chart and evidence regarding its preparation resulted in prejudice, and requires reversal of the judgment in both the civil and estate actions.

In light of this decision, we need not and do not address appellant's further claim that Judge Satt was not entitled to "reverse" Judge Freeman's ruling with respect to the admissibility of the chart. We also need not address his claim that the court erred in its award of damages under Probate Code section 859.

## DISPOSITION

We reverse the judgment and remand the cause for a new trial in accordance with the views expressed in this opinion. Appellant is to have his costs on appeal.

Willhite, J., and Suzukawa, J., concurred.

A petition for a rehearing was denied September 3, 2008, and the opinion was modified to read as printed above. Respondents' petition for review by the Supreme Court was denied November 19, 2008, S166943.