Filed 2/16/18; on rehearing

**CERTIFIED FOR PARTIAL PUBLICATION***

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| SHAWN TERRIS,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>COUNTY OF SANTA BARBARA,<br><br>    Defendant and Respondent. | 2d Civ. No. B268849<br>(Super. Ct. No. 1339241)<br>(Santa Barbara County)<br><br>OPINION FOLLOWING<br>REHEARING |

*Campbell v. Regents of University of California* (2005) 35 Cal.4th 311 holds that public employees must pursue appropriate internal administrative remedies before filing a civil action against their employer. Labor Code section 244 does not require a litigant to exhaust administrative remedies before bringing a civil action.[1] Here we hold section 244 applies only to claims before the Labor Commissioner. It has no effect on the *Campbell* rule.

---

* Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for partial publication. The portions of this opinion to be deleted from publication are identified as those portions between double brackets, e.g., [[/]].

    [1] All statutory references are to the Labor Code unless otherwise stated.

Plaintiff Shawn Terris appeals a summary judgment in favor of her former employer, defendant County of Santa Barbara (County), in her wrongful termination action. We conclude, among other things, that: 1) Terris did not exhaust her administrative remedies on her claims that the County terminated her job to discriminate against her in violation of sections 1101, 1102, and 1102.5; [[2) there are no triable issues of fact on Terris's claim that she was terminated because of her sexual orientation (Gov. Code, § 12940, subd. (a), Fair Employment and Housing Act (FEHA));]] but 3) the trial court erred by awarding the County costs on the FEHA cause of action. We affirm in part and reverse in part.

FACTS

Terris was a County employee in the position of a "Program Business Leader" analyst. She was subject to civil services rules. The County projected a "budget shortfall for the fiscal year 2009-2010" of nearly $11 million. Terris was one of 35 employees laid off.

After receiving a layoff notice in July 2009, Terris exercised her right to remain employed by displacing or "bump[ing]" a person in another position--the "First 5 Program/Business Leader." Patricia Wheatley, the director of First 5 Santa Barbara, decided that position required special skills. She requested a "special skills designation" to expand the requirements for that position. Theresa Duer, the County assistant human resources director, granted that request and determined Terris was not qualified for that position. Terris was laid off.

Terris filed a complaint with the County's Civil Service Commission (Commission). She alleged her termination procedure violated her seniority rights. She argued the County

2.

and County Executive Officer (CEO) Michael F. Brown engaged in "discrimination against her for exercising her rights as a County employee, as an elected Santa Barbara County Employees Retirement Board Trustee, and for filing a Claim Against Public Entity . . . ."

On August 20, 2009, the Commission ruled that 1) it could decide whether the County followed the proper procedures for terminating Terris's employment, but 2) it could not decide Terris's discrimination claims because she had not exhausted her administrative remedy of filing a discrimination complaint with the Equal Employment Opportunity Office (EEO). Terris did not file an EEO complaint. She urged the Commission to decide only whether the County followed the proper procedures in terminating her employment.

One month later, the Commission ruled the special skills designation was appropriate, the layoff was authorized, and the County complied with all required procedures. It found, "[A]ll proper notices were given and seniority was followed."

Terris filed a wrongful termination and employment discrimination action. In her third amended complaint, she alleged the County: 1) terminated her employment to prevent her from holding an elected office as a retirement board trustee (§ 1101) (second cause of action), 2) interfered with her political activity as a retirement board trustee (§ 1102) (third cause of action), and 3) retaliated against her for lawful complaints she had made (§ 1102.5) (fourth cause of action). [[In her fifth cause of action, she alleged sexual orientation discrimination. She said the County "regarded her as [a] lesbian," which was the "motivating factor" in its decision to terminate her. (Gov. Code, § 12940, subd. (a) (FEHA).)]]

3.

The trial court granted the County's motion for summary judgment.  It found:  1) Terris did not exhaust her administrative remedies on her second, third and fourth causes of action; and 2) there was no triable issue of fact on her FEHA cause of action.

## DISCUSSION

### *Exhausting Administrative Remedies*

Terris contends the trial court erred in ruling that she failed to exhaust her administrative remedies before filing her wrongful termination action alleging violation of sections 1101, 1102, and 1102.5.  We disagree.

"[T]he party moving for summary judgment" must "make a prima facie showing of the nonexistence of any triable issue of material fact."  (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.)  "[I]f he carries his burden," the opposing party must make "a prima facie showing of [a triable issue]."  (*Ibid.*)  We review summary judgments de novo.  (*Suarez v. Pacific Northstar Mechanical, Inc.* (2009) 180 Cal.App.4th 430, 436.)  "'We are not bound by the trial court's stated reasons or rationales.'"  (*Ibid.*)

"'[W]here an administrative remedy is provided by statute, relief must be sought from the administrative body and this remedy exhausted before the courts will act.'"  (*Campbell v. Regents of University of California, supra,* 35 Cal.4th 311, 321.)  Administrative remedies include "internal grievance procedures" provided by a public entity.  (*Ibid.*)  County employees must exhaust internal administrative remedies that are provided in county civil service rules.  (*Los Angeles County Employees Assn. v. County of Los Angeles* (1976) 61 Cal.App.3d 926, 934.)  Terris was a County employee "subject to the" County's "Civil Service Rules."

Terris claims the County's discriminatory employment action included: 1) terminating her employment to interfere "with her holding an elected office as a Retirement Board Trustee" (§ 1101); 2) attempting to coerce "and influence" her "political activity as a Retirement Board Trustee" (§ 1102); and 3) retaliating against her because of her "complaints about violations of her activity directed to labor organizing County workers" (§ 1102.5).

The County claims Terris had an administrative remedy to resolve these claims, which she did not pursue. We agree. Terris was required to file an EEO complaint, and if she disagreed with the EEO report, she could file "an appeal directly to the [Commission]." The EEO investigates employment discrimination based on violations of sections 1101, 1102, and 1102.5. The civil service rules provided her with "the right to challenge the alleged discrimination . . . before the Commission . . . ." Terris could have subpoenaed witnesses to testify at an evidentiary hearing. She could have sought judicial review of the Commission's decisions on her discrimination claims through administrative mandamus. The Commission had the authority to reinstate her and order back pay and attorney fees if it so decided.

Terris acknowledged she "did not file an EEO complaint prior to pursuing claims for violation of [sections] 1101, 1102, and 1102.5." (*Campbell v. Regents of University of California*, *supra*, 35 Cal.4th at pp. 329-333 [public employee who claimed retaliatory job termination in violation of the Labor Code had to exhaust the employer's internal administrative remedies]; *Palmer v. Regents of University of California* (2003) 107 Cal.App.4th 899, 904 ["When a . . . public entity establishes an internal grievance mechanism, . . . failure to exhaust those

internal remedies precludes any subsequent private civil action"].)

*The Satyadi Decision and Section 244*

Terris argues *Satyadi v. West Contra Costa Healthcare Dist.* (2014) 232 Cal.App.4th 1022 and section 244 support her contention that she is not required to exhaust her administrative remedies. Quite the contrary, *Satyadi* holds that an employee does not have to file a *Labor Commissioner* claim before suing her employer. But it also instructs that an employee subject to county civil service "internal administrative remedies" must exhaust them. "[I]t appears Satyadi *has exhausted her employer's internal administrative remedies. (See *Campbell* [*v. Regents of University of California,*] *supra*, 35 Cal.4th at p. 333.) The exhaustion doctrine *therefore* poses no further barrier to her action." (*Satyadi*, at p. 1033, italics added.)

Section 244, subdivision (a) provides, in relevant part, "An individual is not required to exhaust administrative remedies or procedures in order to bring a civil action under any provision of this code . . . ." But the phrase "administrative remedies" refers to Labor Commissioner claims. The author of Senate Bill No. 666 said it allows employees to sue "without having first sought administrative remedies that are enforceable by the Labor Commissioner." (Historical and Statutory Notes, 44 West's Ann. Lab. Code (2018 cum. pocket pt.) § 244, p. 310.) It merely clarifies existing law. (*Satyadi v. West Contra Costa Healthcare Dist.*, *supra*, 232 Cal.App.4th at pp. 1032-1033.)

Terris relies on *Neushul v. Regents of the University of California* (C.D.Cal. 2016) 168 F.Supp.3d 1242. There a University of California employee filed a lawsuit under the Labor Code against her employer without exhausting the employer's internal administrative remedies. The federal district court ruled

6.

she could proceed. The court reviewed the relevant California Labor Code provisions and said, "Plaintiff sues under § 1102.5, which . . . contains no exhaustion requirement. [Citations.] And § 244 now provides that if no exhaustion requirement is explicitly set forth in the relevant provision of the Labor Code, including § 1102.5, then the plaintiff may pursue her claim without exhausting administrative remedies. In other words, the amendment of § 244 in 2014 necessarily means that *[University of California] policies requiring administrative exhaustion for claims arising under § 1102.5 are contrary to the Labor Code's clear directive . . . .*" (*Id.* at p. 1249, italics added.)

*Neushul*, a federal trial court, concluded that *Campbell*, a California Supreme Court decision, is no longer valid law. *Neushul* assumed that the term *administrative remedies* in the statute applies to all types of administrative remedies. It apparently reached its conclusion based on the *literal* language of section 244, subdivision (a), which provides, "An individual is not required to exhaust administrative remedies or procedures in order to bring a civil action under any provision of this code, unless that section under which the action is brought expressly requires exhaustion of an administrative remedy."

But *Neushul* did not consider the *context and purpose* of the statutory change. "'"[A] thing may be within the letter of the statute and yet not within the statute, because not within its spirit nor within the intention of its makers."'" (*Westfall v. Swoap* (1976) 58 Cal.App.3d 109, 116.) This is such a case.

As explained by the author of Senate Bill No. 666, section 244, subdivision (a) was enacted to protect the right to sue without first having to exhaust *Labor Commissioner* administrative proceedings. At the same time section 244, subdivision (a) was enacted (Stats. 2013, ch. 577, § 41), the

Legislature also amended section 98.7 involving Labor Commissioner claims. (Stats. 2013, ch. 732, § 3.) It added the following provision: "*In the enforcement of this section*, there is no requirement that an individual exhaust administrative remedies or procedures." (§ 98.7, subd. (g), italics added.)

By making these changes, the Legislature resolved a specific ongoing legal controversy. Courts had reached conflicting results on whether *Campbell's* exhaustion requirement meant a plaintiff had to initially file a claim with the Labor Commissioner before filing an action. (*Satyadi v. West Contra Costa Healthcare Dist.*, *supra*, 232 Cal.App.4th at p. 1031; see also *Miller v. Southwest Airlines Co.* (N.D.Cal. 2013) 923 F.Supp.2d 1206, 1210 [*Campbell* requires initial exhaustion of Labor Commissioner claim before filing the lawsuit]), compare with *Dowell v. Contra Costa County* (N.D.Cal. 2013) 928 F.Supp.2d 1137, 1153 ["'*Campbell* only held that exhaustion of *internal* administrative remedies is required; there is no discussion in *Campbell* of exhaustion of administrative remedies before the Labor Commission'"].) The legislative amendments were specifically related to resolving this problem.

On page 4 of the written description of Senate Bill No. 666, at the April 30, 2013, Senate Judiciary Committee hearing (2013-2014 Reg. Sess.), the author of the bill said it would clarify a problem in existing law. He said the problem is that "various statutes under the Labor Code require the employee or applicant *to first file a claim against the employer with the Labor Commissioner . . . .*" (*Ibid.*, italics added.)

*Satyadi* describes the reason for the Legislature's 2013 amendments. It said the amendments "*merely confirm that a party may bring a civil action for violation of the Labor Code without first exhausting the remedy provided by section 98.7,*

8.

*subdivision (a)*"--a Labor Commissioner claim. (*Satyadi v. West Contra Costa Healthcare Dist.*, *supra*, 232 Cal.App.4th at p. 1032, italics added.)

There is no basis to conclude the Legislature enacted section 244, subdivision (a) to overturn a California Supreme Court decision--*Campbell*, or to extinguish decades of judicially required administrative exhaustion requirements for county employees who have civil service commission internal administrative remedies. As *Campbell* said, "'[C]ourts *should not presume the Legislature in the enactment of statutes intends to overthrow long-established principles of law* unless that intention is made *clearly* to appear either by *express declaration* or by *necessary implication.*'" (*Campbell v. Regents of the University of California*, *supra*, 35 Cal.4th at p. 329, italics added.) Here there is no express legislative declaration that the statute was intended to eliminate the *Campbell* internal administrative remedy exhaustion requirement. Neither the Legislative Counsel's Digest nor the author's summary of Senate Bill No. 666 makes any reference to *Campbell*.

In *Campbell*, our Supreme Court reviewed its prior decisions and said they represent "*a respect for internal grievance procedures and the exhaustion requirement where the Legislature has not specifically mandated its own administrative review process.*" (*Campbell v. Regents of the University of California*, *supra*, 35 Cal.4th at p. 321, italics added.) By enacting section 244, subdivision (a), the Legislature did not create such a new administrative review process that applies to all administrative agencies. It eliminated the requirement that a claim must first be bought before the Labor Commissioner before filing a civil action.

9.

*Adequate Notice*

Terris contends the County did not provide her adequate notice of her rights and the consequences. She claimed the County's notices only said she "may" appeal. But exhaustion of administrative remedies is mandatory "'even though the administrative remedy is couched in permissive language.'" (*Marquez v. Gourley* (2002) 102 Cal.App.4th 710, 714.) Moreover, Terris admitted she "was aware of" the "EEO complaint procedure" and was represented by counsel at all relevant stages.

The Commission also advised Terris and her counsel that if Terris wanted to raise her Labor Code discrimination/retaliation issues, she first had to file an EEO complaint. Because she had not filed it, the Commission could only decide whether proper job termination procedures were followed. It offered her a continuance so that issue and the discrimination/retaliation issues could be decided together. But she and her counsel *rejected* that alternative and *elected* to have a Commission hearing only on the procedural issues. Terris decided not to file the EEO complaint. Consequently, her section 1101, 1102, and 1102.5 claims are barred. (*Campbell v. Regents of University of California, supra*, 35 Cal.4th at p. 321; *Basurto v. Imperial Irrigation Dist.* (2012) 211 Cal.App.4th 866, 888; *Hooks v. State Personnel Bd.* (1980) 111 Cal.App.3d 572, 578 [plaintiff is barred from raising issues in court that could have been raised, but were not, in the administrative proceeding involving the employment termination].) Therefore, we do not consider Terris's second, third and fourth causes of action. These causes of action relate to her activities as a retirement board trustee and her complaints about employer practices.

[[*Discrimination Based on Sexual Orientation*

Terris contends in her fifth cause of action she "established triable issues of fact . . . for wrongful termination based on her sexual orientation." (Gov. Code, § 12940, subd. (a) (FEHA).) She alleged the County "regarded her as [a] lesbian," which was its "motivating factor" for her layoff. She said she "revealed her sexual orientation publicly in or around 2003."

### Brown's Remarks

Terris claimed between 1998 and 2001, County CEO Brown used the terms "fags," "faggots," and "queers" to describe "homosexuals." Terris relies on these remarks to support her FEHA cause of action.

### Admissibility

The County contends these remarks are inadmissible. It notes that Terris entered into "settlement agreements with the County in 2003 and in 2006 in which she relinquished her right to sue the County for actions occurring prior to the settlement dates." The 2006 agreement provides that Terris may not "maintain" a "judicial proceeding" against the County "based wholly *or in part on any conduct*" by the County "occurring at any time prior to the signing of this Agreement." (Italics added.) In her reply brief, Terris made no showing on how she could rely on Brown's 1998 to 2001 remarks in light of these settlement agreements. (*Estate of Thottam* (2008) 165 Cal.App.4th 1331, 1339.) But even had she made such a showing, the result would not change.

### The Merits

Government Code section 12940, subdivision (a) "prohibits discrimination that causes an employer" to "discharge the person from employment." (*Harris v. City of Santa Monica* (2013) 56 Cal.4th 203, 231.) "[It] does not purport to outlaw discriminatory

11.

thoughts, beliefs, or stray remarks that are unconnected to employment decisionmaking." (*Ibid.*) "[S]uch comments alone do not support a claim under section 12940(a) . . . ." (*Ibid.*)

The County claims Brown did not know Terris's sexual orientation and his "stray remarks" were not directed at her. (*Lyle v. Warner Brothers Television Productions* (2006) 38 Cal.4th 264, 282 [no sexual harassment claim "where a supervisor . . . simply uses crude or inappropriate language . . . without directing . . . gender-related language toward a plaintiff"].) Terris testified she did not know if Brown knew she was a lesbian when he made his remarks in 1998 to 2001. She did not tell him her sexual identity at that time or in 2003. She said his remarks "were not directed at, or regarding" her.

Terris claimed that in a conversation between 1998 and 2001, Brown said his son and his son's friends used the term "fag" to describe homosexuals and Brown said it was "a common term to describe homosexuals." Such language is inappropriate, but FEHA is not a "civility code" (*Lyle v. Warner Brothers Television Productions*, *supra*, 38 Cal.4th at p. 295), and bigoted language alone does not support a FEHA case. (*Harris v. City of Santa Monica*, *supra*, 56 Cal.4th at p. 231.) Terris alleged Brown was "hostile to homosexuals." But in her deposition, she said, "*I don't know if he dislikes homosexuals*." (Italics added.) Proof of "discriminatory animus" is necessary. (*Arteaga v. Brink's, Inc.* (2008) 163 Cal.App.4th 327, 343.)

*Causation*

The alleged discrimination must be a substantial factor in causing the adverse employment action. (*Harris v. City of Santa Monica*, *supra*, 56 Cal.4th at pp. 231, 232.) A party must file "an administrative complaint with DFEH [Department of Fair Employment and Housing]" within one year of the FEHA

violation.  (*Dominguez v. Washington Mutual Bank* (2008) 168 Cal.App.4th 714, 720.)  Terris *admitted* that she had "no evidence" of sexual orientation discrimination within the year prior to filing the DFEH claim.  That period may be extended "if discriminatory practices" occurred beyond that period.  (*Id.* at p. 721.)

The County claims there is no evidence of sexual orientation discriminatory practices leading to her layoff.  Brown's comments occurred between 1998 and 2001.  Terris's layoff was in 2009.  Terris testified that between 2003 and 2009, Brown made no derogatory comments to her about "homosexuality," her "status as a lesbian," or any statements about her "sexual orientation."  An employer's year-old remarks are not too remote as causation evidence.  (*Danzer v. Norden Systems, Inc.* (2d Cir. 1998) 151 F.3d 50, 55.)  But here there was a huge gap in the causal nexus--eight years between the remarks and the layoff.

*The County's Reasons for the Layoff and Terris's Response*

The County contends, assuming Terris made a showing of discrimination, it presented nondiscriminatory reasons for her layoff.  If the employer makes that showing, the employee must show the employer's reasons are a pretext or prove discrimination.  (*Scotch v. Art Institute of California* (2009) 173 Cal.App.4th 986, 1005.)

The County projected a "budget shortfall for the fiscal year 2009-2010" of nearly $11 million.  Terris was one of the 35 employees laid off for "the fiscal year 2008-2009."  The County had a nondiscriminatory reason for initiating layoffs.  (*Malmstrom v. Kaiser Aluminum & Chemical Corp.* (1986) 187 Cal.App.3d 299, 321.)

Terris claims that "[i]n the fiscal year in which [she] was laid off, there were approximately eight analysts in the CEO's Department . . . . Of those, . . . [Terris] had the most seniority" and she was laid off. But she was not the only one ultimately laid off in her unit in 2009, and she was not in the same employment classification as the other analysts. (*Gates v. Caterpillar, Inc.* (7th Cir. 2008) 513 F.3d 680, 690 [discriminatory treatment claim requires proof that the other employees were "directly comparable to [the plaintiff] in all material respects"].) Terris said the other employees had agreed to the employer's request to become "at will" analysts. She did not agree.

The County's alleged preference for an "at will" workforce is not an invalid business interest. (*Engquist v. Oregon Department of Agriculture* (2008) 553 U.S. 591, 606; *Darr v. Town of Telluride* (10th Cir. 2007) 495 F.3d 1243, 1257 ["the due process clause does not preclude public employers from maintaining at-will employment relationships"].) Such a business goal is not unlawful discrimination. (*Engquist*, at p. 606; *Hicks v. KNTV Television, Inc.* (2008) 160 Cal.App.4th 994, 1011.) Employment discrimination laws permit the County to make necessary management decisions. (*Texas Dept. of Community Affairs v. Burdine* (1981) 450 U.S. 248, 259.) That includes the "freedom to reorganize, reduce, and consolidate its work force." (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 338.)

Moreover, the County's evidence shows an attempt to prevent layoffs for *any* of the CEO analysts by selecting Terris's position. That allowed Terris to maintain employment by exercising her civil service bumping rights to obtain another position. The other analysts did not have those rights. Terris disagrees with the County's choice, but she has not shown its action did not further valid interests. The County said it

14.

responded to the financial crisis and achieved fairness by meeting "the obligation to cut the budget *while preserving [Terris's] job*." (Italics added.)

Terris claims Brown's and the County's actions show they were "hostile to homosexuals." But "we can draw an inference of discrimination only if plaintiff '"can show that others not in the protected class were treated more favorably."'" (*Gibbs v. Consolidated Services* (2003) 111 Cal.App.4th 794, 800.) Terris 1) did not present evidence of the sexual orientation of those who were laid off and not laid off, and 2) did not show *any* County practices based on her sexual identity. In separate statement No. 39, she listed the evidence supporting her FEHA case as Brown's stray remarks between 1998 and 2001. But that, "[by] itself, does not prove *actionable discrimination*." (*Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 541, italics added; see also *Harris v. City of Santa Monica, supra*, 56 Cal.4th at p. 231.) Moreover, Terris admitted that she did not "know if [Brown] dislikes homosexuals."

Terris contends Brown should have laid off other employees. But showing "triable issues concerning the appropriateness of the adverse action" is not enough. (*Hersant v. Department of Social Services* (1997) 57 Cal.App.4th 997, 1005.) The Board of Supervisors approved the budget that authorized the layoffs. (*County of Butte v. Superior Court* (1985) 176 Cal.App.3d 693, 698.) Terris does not claim the supervisors were biased, and she ""cannot simply show that the employer's decision was wrong or mistaken, since the . . . issue is whether discriminatory animus motivated the employer."'" (*Arteaga v. Brink's, Inc., supra*, 163 Cal.App.4th at p. 343.) There was a 3 percent cut in the "CEO Department" budget. Robert Geis, the County auditor-controller, declared the layoffs "were necessary" for the County to operate within the budget.

Terris suggests Brown could have manipulated the budget process to target her because of her sexual identity.  But County administrators do not approve the budget (*County of Butte v. Superior Court*, *supra*, 176 Cal.App.3d at p. 699), and speculation does not suffice.  (*Hanson v. Lucky Stores, Inc.* (1999) 74 Cal.App.4th 215, 225; *Davis v. Time Warner Cable* (7th Cir. 2011) 651 F.3d 664, 676.)  The County objected to the lack of admissible evidence to support this claim, and separate statements Nos. 37 and 39 support its position.  Terris did not show how Brown's eight-year-old remarks were "linked to [her] termination." (*Davis*, at p. 672.)  She admitted those remarks were "not directed at [her]" and she did not know "if [Brown] dislikes homosexuals."  Terris presented no evidence showing sexual orientation played any role in the alleged budget manipulations. She also admitted that 1) there was an "*extreme budget crisis*," and 2) "it was *necessary* for the County to make the *difficult decision* that some County employees *must be laid off*."  (Italics added.)  Where economic necessity mandates a workforce reduction, the employee must show more than only "a weak suspicion that discrimination was a likely basis" for his or her layoff.  (*Guz v. Bechtel National, Inc.*, *supra*, 24 Cal.4th at pp. 369-370.)

*Duer's and Wheatley's Decisions*

The County also notes that people other than Brown *initiated* the process that ultimately caused her layoff.  Terris exercised "her option to displace or 'bump' the First 5 Program/Business Leader" to avoid a layoff.  Wheatley decided this position required special skills.  Duer determined Terris did not have those skills.  Terris *admitted* that Duer and Wheatley had not "discriminated" against her "in any way."  Duer declared she had "no knowledge" of Terris's "sexual orientation, and it had

no bearing on [her] decision . . . ." Terris did not meet her burden to challenge those facts or show "any wrongful act." (*Martin v. Lockheed Missiles & Space Co., Inc.* (1994) 29 Cal.App.4th 1718, 1731.) "Absent a reason to doubt the validity" of Duer's and Wheatley's decisions, the County "was *entitled to rely on this information* in deciding to terminate [Terris's] employment and *acted reasonably* in doing so." (*Chen v. Dow Chemical Co.* (6th Cir. 2009) 580 F.3d 394, 401, italics added.)

Terris claims Brown ultimately approved an unfair process causing her layoff in violation of her seniority rights. But the Commission found the process was fair and "seniority was followed." It upheld the layoff because of Terris's lack of qualifications. The County notes Terris did not appeal that decision which is now final. The Commission's findings are binding on employees who do not timely petition for administrative mandamus relief. (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1090-1091; *Castillo v. City of Los Angeles* (2001) 92 Cal.App.4th 477, 481; *Kupka v. Board of Administration* (1981) 122 Cal.App.3d 791, 794-795.) Those findings show valid grounds for the layoff.

Moreover, the County claimed Brown made decisions that protected Terris's rights. Brown determined she had *the right* to bump the First 5 Program /Business Leader *to avoid a layoff.* He said he expected she would "take advantage of bumping." "It would be wholly inconsistent to intentionally discriminate while simultaneously giving the alleged targets of the discrimination *an unfettered option to remove themselves from the situation.*" (*Davis v. Time Warner Cable*, *supra*, 651 F.3d at p. 676, italics added.) Brown also rejected Wheatley's first request to place a special skills designation for that position. That also protected Terris. Wheatley later made a more comprehensive justification

17.

for the special skills designation which Duer granted. They had a nondiscriminatory reason for adding these requirements and for the layoff. (*Gibbs v. Consolidated Services, supra,* 111 Cal.App.4th at p. 800 [employers may properly discharge employees who lack the skills for "restructured" positions].)

Terris notes that between March 9, 2006, and July 13, 2009, she made 11 complaints about County actions. But she describes these complaints to be about the County interfering "with her role as Retirement Board Trustee and her union organizing activities"--issues for which Terris had an administrative remedy which she did not exhaust and cannot relitigate. (*Campbell v. Regents of University of California, supra,* 35 Cal.4th at p. 321; *Basurto v. Imperial Irrigation Dist., supra,* 211 Cal.App.4th at p. 888; *Hooks v. State Personnel Board, supra,* 111 Cal.App.3d at p. 578.)

Moreover, these were not complaints about sexual orientation discrimination directed against her. Terris said she "revealed her sexual orientation publicly" in 2003. But she was unable to state *any facts* showing that between 2003 and her 2009 layoff that any County officer, employee or agent treated her as or "perceived" her "to be lesbian" as alleged in her FEHA cause of action. She had "no evidence of discrimination related to her sexual orientation that occurred in the one year before she filed her FEHA complaint with [DFEH]." Separate statement No. 39 shows her inability to prove sexual orientation was "a substantial factor" in causing the layoff. (*Harris v. City of Santa Monica, supra,* 56 Cal.4th at p. 232.)]]

*Costs*

The parties note that the trial court awarded the County costs on Terris's FEHA and non-FEHA causes of action. Terris contends it erred by awarding the FEHA costs. We agree. Costs

are not generally awarded against employees who file unsuccessful FEHA cases. (*Williams v. Chino Valley Independent Fire Dist.* (2015) 61 Cal.4th 97, 115.) Awarding costs against them could undermine the state's anti-discrimination public policy and have a chilling effect on meritorious FEHA "suits by plaintiffs with limited financial resources." (*Id.* at p. 113.) There is, however, an exception to this rule for frivolous litigation. But it does not apply here. The inability to prove an FEHA element is not equivalent to filing an entirely baseless lawsuit. We have reviewed Terris's remaining contentions and we conclude she has not shown other grounds for reversal.

## DISPOSITION

The order awarding the County costs on the FEHA cause of action is reversed and the matter is remanded to the trial court to redetermine costs. In all other respects, the judgment is affirmed. The parties shall bear their own costs on appeal.

CERTIFIED FOR PARTIAL PUBLICATION.


GILBERT, P. J.

We concur:


YEGAN, J.


PERREN, J.


19.

Donna D. Geck, Judge

Superior Court County of Santa Barbara

_____

James H. Cordes for Plaintiff and Appellant.

Nye, Peabody, Stirling, Hale & Miller, LLP, Jonathan D. Miller, Holly C. Blackwell for Defendant and Respondent.